# EXHIBIT "D"

# REPORT OF FINDINGS

## INVESTIGATION OF TRAUMATIC INJURIES TO MR. MATTHEW RILEY

JOHN C. FROST
Safety Engineer

JUNE 28, 2006

Safety Engineering Services
2627 Trailway Road, SE
Huntsville, Alabama 35801
(256) 650-0335

1

## BACKGROUND

On August 29th, 2003, Mr. Matthew Riley, a Maintenance Mechanic for Flavor House Products was seriously injured while drilling a hole in a concrete floor. As an experienced Safety Engineer, I was asked to evaluate the accident and determine the root cause(s) of Mr. Riley's injuries.

My education includes a Bachelor of Science in Electrical Engineering from the University Of Virginia in 1972, where I was a Dupont Scholar, and a Master of Science in Industrial Engineering specializing in Safety Engineering from Texas A&M University in 1974. I served as a practicing Safety Engineer for the United States Department Of Defense for 33 years as a civilian. I retired as the Chief of the Safety Office at the U.S. Army's Aviation and Missile Command in 2005. In that capacity I was responsible for safety engineering guidance for the design and support for the Army's aircraft and missiles, as well as safety support to the approximately 8,000 employees of the command. A copy of my Curriculum Vitae is attached.

## DATA EVALUATED

I have reviewed the following materials specific to this incident in my ongoing analysis of this matter:

1.   Photographs by United Rentals of the equipment being utilized at the time of the injury.

2.   Photographs of the accident scene near the time of the accident

3.   Video of a teardown inspection of the same equipment.

4.   Chemical analysis by Applied Technical Services of material found in the equipment in question.

5.   Deposition testimony of Mr. Matthew Riley.

6.   Owners Manual for Model DM500 Core Drill.

7.   The Complaint in the matter.

8.   United Rental's Initial Disclosures and a Supplement thereto.

## RECONSTRUCTED ACCIDENT SEQUENCE

Based upon my review of the materials available at this time, it is my opinion that the sequence of events preceding Mr. Riley's injury was fundamentally as follows:

On the evening of August 28th, 2003, Mr. Riley began his shift as a Flavor House Products Maintenance Mechanic at approximately 11 PM. This was his fourth day on the job. He was directed by his supervisor, Mr. Mike Walters, to assist in drilling two holes in a concrete floor for eventual protective pylon installation. He was told they were to use a DM500 Core Drill rented from United Rentals. This unit is shown below.



3

Mr. Riley informed his supervisor that he had never used such a machine. No Operator's Manual was available for Mr. Riley to review.

After a general inspection of the drill and clearing up the work area, Mr. Riley installed the vacuum gasket on the underside of the drill frame to allow use of the vacuum restraint device to prevent drill movement. A water hose was directed at the drill bit entry point for cooling and lubrication. Mr. Walters began to drill the first of the two required holes. Mr. Riley watched to learn how to use the drill. After approximately five to ten minutes and four inches of drill depth, the drill frame began to turn and Mr. Walters got out of it's way while Mr. Riley reached over to the toggle switch and turned the drill off. Mr. Walters then "took it easy" and proceeded by bracing the drill with his feet. The hole was successfully completed.

Mr Riley proceeded to drill the second hole. The drill was moved to the new location and the water was redirected to the drill bit. Mr. Riley checked the vacuum sealing gasket and made sure that the vacuum motor was running. He looked at the vacuum gauge but couldn't judge it's meaning because of lack of indication of acceptable readings. He put approximately one half of his body weight on the drill base to secure it and proceeded to drill. When the drill reached a depth of approximately four inches, the bit suddenly jammed and the drill frame began to spin. Mr. Riley was thrown from the base and caught by the flailing power cord. The drill motor continued to run. He was pulled to the ground and then hit in the face by the spinning drill frame, causing serious facial injuries. The drill motor finally stopped when the power cord was severed by the spinning drill.



## FINDINGS AND OPINIONS

Information is still being developed in the investigation of this case. As that information becomes available it may shed more light on the details of the design, distribution, maintenance and rental of the equipment in question. Based upon review of the material identified above and my background, education and experience in Safety Engineering it is my professional opinion that:

1. At the time of his injury, Mr. Riley was attempting to accomplish his assigned task in a reasonable and foreseeable manner and in a manner directed by his supervisor.

2. At the time of his injury, Mr. Riley was using the DM500 drill in a manner that was reasonably foreseeable to its manufacturer.

3. Mr. Riley's injuries resulted from the frame of the DM500 drill suddenly beginning to spin when driven by the electric drill motor against a binding drill bit. The vacuum restraint system failed to restrain the forces involved.

4. Utilizing even the most basic safety analysis techniques, the hazard of a spinning drill frame should have been clearly recognized by the drill manufacturer and safety controls should have been implemented to adequately abate the hazard.

5. By design, the on-board vacuum system utilized by the manufacturer to stabilize the drill frame is inadequate and subject to numerous single point failures. These include leakage around the base sealing gasket, blockage of the vacuum channel, hose, plumbing or water separator and clogging of the vacuum filter and other components. Some of these failure points are indicated in the following photograph.

5



6. In accordance with standard Safety Engineering "Order Of Design Precedence" as described in the National Safety Council's Accident Prevention Manual and other publications, the hazard of sudden violent spinning of the drill frame should have been controlled using the following techniques in the following order:

   a. **Design For Minimum Risk.** Such design should have used a drill motor torque or clutch release value that would have kept the frame forces within the stability limits provided by the restraint system as it functioned in the field. Post accident tests revealed the clutch would not release when torques as high as 231 foot-pounds were applied.

   b. **Incorporate Safety Devices.** Such devices should have included a vacuum interlock that sensed loss of vacuum under the drill frame skirt and immediately removed electrical power from the drill. Additionally, the electrical switch should not have been a toggle switch that also rotated when the frame did



making it almost impossible for the operator to turn the run-away drill off. Instead, it should have been a spring loaded "dead man" design that automatically removed power when released.

c. **Provide Warning Devices.** While a gauge existed that, under some circumstances, could give an indication of the status of the vacuum restraint system, this gauge was unsuitable for it's intended purpose for the following reasons.

> 1) The gauge was located at the inlet to the vacuum pump rather than on the vacuum chamber at the base of the frame. Consequently, it would give an false "OK" reading even if 100% blockage existed in the vacuum channels, hose, water separator or plumbing that ran from the pump down to the vacuum chamber.

> 2) The gauge face had absolutely no indication of what an acceptable range of pressures was. A color coded band of the acceptable range is normally used for such safety related gauges.



> 3) The gauge was physically located away from the operator's controls and not likely to be

7

monitored continuously.



There was no audible alert to loss of vacuum. Additionally, sudden loss of vacuum would result in immediate loss of drill restraint with no time for operator reaction.

d. **Develop And Implement Operating Procedures and Employee Training Programs.** In my opinion, reliance on training to control this hazard is not reasonable in view of the design measures that were available to positively prevent it. This is especially true in view of the rental nature of the device's distribution. The labels/warnings that were on the drill were ineffective in informing the user of the risk involved or of the steps to be taken to minimize the risk and did not meet industry standards for such warnings. I have seen no indication that United Rentals, the company that rented the drill in question to Mr. Riley's employer, took adequate steps to train any representative of the hazard of the drill and the steps needed to avoid that hazard.

e. **Use Personal protective Equipment.** In my opinion, no reasonable Personal Protective Equipment would have been effective at controlling the hazard of a spinning drill frame of the torque involved in this equipment

7. Utilizing the design techniques discussed above, it is my opinion that it was technologically and economically feasible to adequately control the hazard of loss of frame restraint in the DM 500 Core Drill.

8. It is additionally my opinion that at the time Mr Riley and Mr. Walters began to use the DM 500 Core Drill. It was not in a safe condition. In addition to a misplaced water inlet connection and broken teeth on the drill bit, post accident inspection revealed significant Aluminum Oxide blockage in the restraint vacuum pump chamber that is likely to have diminished the vacuum effectiveness and further contribute to the cause of Mr. Riley's injury.



9. Based upon the above findings and my background, training and experience, it is my opinion that when used in a reasonably foreseeable fashion, the design of the DM 500 Core Drill is inherently hazardous, unreasonably dangerous and defective. Furthermore, the hazardous design and condition of the DM 500 Core Drill was the root cause of Mr. Riley's injuries.

10. The above opinions are stated within a reasonable degree of engineering certainty.

## RULE 26 DISCLOSURE INFORMATION

The above report includes an accurate description of all of my opinions developed to date and the basis for these opinions. A summary of my qualifications, education and experience is provided in the attached Curriculum Vitae. I am being compensated for this accident investigation at my normal rate of $250 per hour. A list of cases in which I have provided testimony in the last five years is also attached.

John C. Frost
Principal
Safety Engineering Services

Date:_____ June 28, 2006

Reconstructed Testimony Case List: John Frost
06/28/06

2001
Barley v. Cranepro (Personal injury from crane hook malfunction)
Walters v. Altec (Conductive IALD)
Kelly v. Whirlpool (Electrical house fire fatality)
McCall v. Goldkist (Grain auger entrapment)
Sawyer v. Altec (Conductive IALD)

2002
Self v. Golden Construction (Crane power line contact fatality)
Hill v. Tube City (Worker crushed to death by truck)
Mitchel v. GM (Auto accident fatality)
Halsey v. Dillards (Scissors lift collapse)
Mulkey v. NKK Steel (Electrical arc furnace explosion)

2003
Ruiz v. Kia (Vehicle rollover death)
Dallas v. McWayne (Worker injured in industrial equipment)
Henry v. Copeland (Assembly worker amputation in welder)
Calloway v. PPG (Worker fall)
Everts v. Altec (IALD)
Boddie v, Invacare (Wheelchair rollover)

2004
Slaughter v. Altec (IALD)
Almond v. Coop Propane (Residential Propane gas explosion)
Anthony v. Chroen Pokphand (Caustic spray damage to eye)
Wheat v. AEC (Backing dump truck fatality)
Klibanoff v. Country Gas (Residential propane gas explosion)
Walters v. Otterbine (Electrocution)
Everts v. Altec Trial (IALD)
Martinez v. Altec (IALD)

2005
Sharp v. Altec (IALD)
Sawyer v. Altec (IALD)
Tolbert v. Craft Electric (Exhaust Gas Exposure)
Walters v. Otterbine Trial (Electrocution)
Cannon v. Granny's Lemonade (Electrocution)
Tolbert v. Craft Electric (Trial) (Exhaust Gas Exposure)
Coale v. IPSCO (Worker crushed)
Staples v. Fluke Instruments (Electric shock)
Ficker v. Onyx Environmental (Asphyxiation)
Martinez v. Altec (Trial) (IALD)
Bennett v. Altec (IALD)

11

Potter v. Altec (IALD)
Woods v. Alabama Power (Electric Shock)

2006
Cassey v. Elliot (Electrocution)
Terry v. Schueck (Crushed By Steel Guardrail)