# EXHIBIT "B"

--- So.2d ----, 2006 WL 2089914 (Ala.)

Only the Westlaw citation is currently available.

NOT YET RELEASED FOR PUBLICATION.

Supreme Court of Alabama.
BOARD OF WATER AND SEWER COMMISSIONERS of the CITY OF MOBILE
v.
James **HUNTER** et al.
1050067.
July 28, 2006.

**Background:** Homeowners brought action against city's water board, alleging negligent design, construction, operation, and maintenance of the sanitary-sewer system that served their residence. The Mobile Circuit Court, No. CV-02-595, issued order declaring statute defining "practice of engineering" to include giving testimony unconstitutional, and enjoined application of term testimony as used in the provision.

**Holdings:** The Supreme Court, Stuart, J., held that:
(1) act that amended definition of "practice of engineering" sufficiently identified subject of the act in its title;
(2) homeowners did not have standing to challenge act as unconstitutionally vague;
(3) homeowners did not have standing to bring facial challenge to law as unconstitutionally vague;
(4) act did not violate homeowners' due process rights;
(5) act did not violate homeowners' equal protection rights;
(6) act did not violate separation-of-powers doctrine of Alabama Constitution; and
(7) act did not violate the Interstate Commerce Clause of the United States Constitution.

Reversed and remanded; injunction dissolved.

Parker, J., concurred in the result.

[1] KeyCite Notes 

☞30 Appeal and Error
 ☞30XVI Review
  ☞30XVI(F) Trial De Novo
   ☞30k892 Trial De Novo
    ☞30k893 Cases Triable in Appellate Court
     ☞30k893(1) k. In General. Most Cited Cases

Supreme Court review of constitutional challenges to legislative enactments is de novo.

[2] KeyCite Notes

☞92 Constitutional Law
 ☞92II Construction, Operation, and Enforcement of Constitutional Provisions
  ☞92k44 Determination of Constitutional Questions
   ☞92k48 Presumptions and Construction in Favor of Constitutionality
    ☞92k48(1) k. In General. Most Cited Cases

In passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.

[3] KeyCite Notes

⇦92 Constitutional Law
    ⇦92II Construction, Operation, and Enforcement of Constitutional Provisions
        ⇦92k44 Determination of Constitutional Questions
            ⇦92k48 Presumptions and Construction in Favor of Constitutionality
                ⇦92k48(3) k. Doubtful Cases; Construction to Avoid Doubt. Most Cited Cases

It is the recognized duty of the courts to sustain an act unless it is clear beyond a reasonable doubt that it is violative of the fundamental law.

[4] KeyCite Notes

⇦30 Appeal and Error
    ⇦30XVI Review
        ⇦30XVI(G) Presumptions
            ⇦30k931 Findings of Court or Referee
                ⇦30k931(2) k. Conclusions of Law. Most Cited Cases

Trial court did not receive evidence ore tenus in homeowners' action against city's water board, and, thus, there was no presumption of correctness attached to the trial court's order declaring that statute defining "practice of engineering" to include giving testimony was unconstitutional, and enjoining application of term testimony as used in the provision.

[5] KeyCite Notes

⇦30 Appeal and Error
    ⇦30XVI Review
        ⇦30XVI(F) Trial De Novo
            ⇦30k892 Trial De Novo
                ⇦30k893 Cases Triable in Appellate Court
                    ⇦30k893(1) k. In General. Most Cited Cases

The trial court's application of the law to undisputed facts is reviewed de novo.

[6] KeyCite Notes

⇦30 Appeal and Error
    ⇦30XVI Review
        ⇦30XVI(F) Trial De Novo
            ⇦30k892 Trial De Novo
                ⇦30k893 Cases Triable in Appellate Court
                    ⇦30k893(2) k. Equitable Proceedings. Most Cited Cases

The Supreme court reviews the trial court's grant of a permanent injunction under a de novo standard.

[7] KeyCite Notes

⇦238 Licenses
    ⇦238I For Occupations and Privileges
        ⇦238k7 Constitutionality and Validity of Acts and Ordinances
            ⇦238k7(1) k. In General. Most Cited Cases

☞361 Statutes KeyCite Notes 🔲
  ☞361III Subjects and Titles of Acts
    ☞361k107 Acts Relating to One or More Subjects
      ☞361k107(1) k. In General. Most Cited Cases

Act amending the definition of the "practice of engineering" to include giving testimony sufficiently identified the subject of the act in its title, which provided that it was "to amend Sections" which "relate to the regulation and registration of professional engineers," and, thus act did not violate the single-subject rule of the Alabama Constitution; definitional section was included in list of sections amended, and the amendment of the definition to include giving testimony was germane to the subject matter of the existing section. Const. Art. 1, § 45; Code 1975, § 34-11-1(7).

Act amending the definition of the "practice of engineering" to include giving testimony sufficiently identified the subject of the act in its title, which provided that it was "to amend Sections" which "relate to the regulation and registration of professional engineers," and, thus act did not violate the single-subject rule of the Alabama Constitution; definitional section was included in list of sections amended, and the amendment of the definition to include giving testimony was germane to the subject matter of the existing section. Const. Art. 1, § 45; Code 1975, § 34-11-1(7).

[8] KeyCite Notes 🔲

☞361 Statutes
  ☞361III Subjects and Titles of Acts
    ☞361k109.11 k. Amendatory Acts. Most Cited Cases

The title of an amendatory act need only identify that it is "An Act to Amend" so long as (1) it identifies the statute being amended, and (2) the substance of the amendment is germane to the existing statute. Const. Art. 1, § 45.

[9] KeyCite Notes 🔲

☞361 Statutes
  ☞361III Subjects and Titles of Acts
    ☞361k109.11 k. Amendatory Acts. Most Cited Cases

The title to an amendatory act is not required to list, in an exhaustive fashion, all of the subjects that might be secondarily impacted by the amendments proposed by the act. Const. Art. 1, § 45.

[10] KeyCite Notes 🔲

☞361 Statutes
  ☞361III Subjects and Titles of Acts
    ☞361k105 Constitutional Requirements and Restrictions
      ☞361k105(1) k. In General. Most Cited Cases

The single-subject rule of the Alabama Constitution should be liberally and reasonably construed to permit the legislature to operate without undue strictures on its prerogatives; the rule should not be exactingly enforced to cripple legislation. Const. Art. 1, § 45.

[11] KeyCite Notes 🔲

☞361 Statutes
  ☞361III Subjects and Titles of Acts
    ☞361k105 Constitutional Requirements and Restrictions

<⇐361k105(1) k. In General. Most Cited Cases

The purpose of the single-subject rule of the Alabama Constitution is to prevent fraud and surprise on the legislature by prohibiting measures in a bill not reflected in its title; this purpose is served so long as the subject matter included in the bill is germane to, cognate with, or complementary to the idea expressed in the title. Const. Art. 1, § 45.

[12] KeyCite Notes 

<⇐92 Constitutional Law
   <⇐92II Construction, Operation, and Enforcement of Constitutional Provisions
      <⇐92k41 Persons Entitled to Raise Constitutional Questions
         <⇐92k42.2 Particular Questions or Grounds of Attack
            <⇐92k42.2(1) k. In General. Most Cited Cases

Homeowners who sought to have certified engineer intern testify regarding alleged negligent design and construction of sewer system serving their home did not have standing to challenge, as unconstitutionally vague, law amending the statutory definition of "practice of engineering," so as to include giving testimony; homeowners were not subject to the licensing requirement, and Licensure Board did not attempt to prosecute homeowners for alleged violation of the Licensure Act. Const. Art. 1, §§ 6, 13; Code 1975, § 34-11-1(7).

[13] KeyCite Notes

<⇐92 Constitutional Law
   <⇐92II Construction, Operation, and Enforcement of Constitutional Provisions
      <⇐92k41 Persons Entitled to Raise Constitutional Questions
         <⇐92k42.2 Particular Questions or Grounds of Attack
            <⇐92k42.2(1) k. In General. Most Cited Cases

In order to challenge a statute on the basis of vagueness, the challenger must first have standing to do so; a litigant has no standing to assert a vagueness claim against a statute if that litigant's conduct is clearly proscribed by that statute. Const. Art. 1, §§ 6, 13.

[14] KeyCite Notes

<⇐92 Constitutional Law
   <⇐92II Construction, Operation, and Enforcement of Constitutional Provisions
      <⇐92k41 Persons Entitled to Raise Constitutional Questions
         <⇐92k42.2 Particular Questions or Grounds of Attack
            <⇐92k42.2(1) k. In General. Most Cited Cases

Homeowners who sought to have certified engineer intern testify as expert regarding alleged negligent design and construction of sewer system serving their home did not have standing to bring facial challenge to law amending statutory definition of "practice of engineering" so as to include giving testimony, on basis that law was unconstitutionally vague; homeowners' proffered expert unquestionably fell within the proscription of the Licensure Act, and it was undisputed that expert was not licensed as an engineer and that expert attempted to offer sworn testimony regarding engineering matters. Const. Art. 1, §§ 6, 13; Code 1975, § 34-11-1(7).

[15] KeyCite Notes 

<⇐268 Municipal Corporations
   <⇐268X Police Power and Regulations
      <⇐268X(A) Delegation, Extent, and Exercise of Power
         <⇐268k594 Ordinances and Regulations in General

268k594(2) k. Form and Sufficiency in General. Most Cited Cases

361 Statutes KeyCite Notes
  361I Enactment, Requisites, and Validity in General
    361k45 Validity and Sufficiency of Provisions
      361k47 k. Certainty and Definiteness. Most Cited Cases

Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced. Const. Art. 1, §§ 6, 13.

Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced. Const. Art. 1, §§ 6, 13.

[16] KeyCite Notes

361 Statutes
  361I Enactment, Requisites, and Validity in General
    361k45 Validity and Sufficiency of Provisions
      361k47 k. Certainty and Definiteness. Most Cited Cases

The judicial power to declare a statute void for vagueness should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of the known and accepted rules of construction, to determine with any reasonable degree of certainty, what the legislature intended. Const. Art. 1, §§ 6, 13.

[17] KeyCite Notes

238 Licenses
  238I For Occupations and Privileges
    238k2 Power to License or Tax
      238k5 k. States. Most Cited Cases

The Alabama Legislature has the power to regulate professions and to classify the activities subject to regulation as part of that profession.

[18] KeyCite Notes

92 Constitutional Law
  92XII Due Process of Law
    92k287 Licenses and License Taxes
      92k287.2 Occupation, Employment, Trade, Business, or Profession
        92k287.2(5) k. Professions. Most Cited Cases

238 Licenses KeyCite Notes
  238I For Occupations and Privileges
    238k7 Constitutionality and Validity of Acts and Ordinances
      238k7(1) k. In General. Most Cited Cases

Amendment to Licensure Act's definition of "practice of engineering" to include giving testimony did not violate due process rights of homeowners who sought to have certified engineer intern testify as expert regarding alleged negligent design and construction of sewer system serving their home; licensing requirement was rational step toward accomplishing stated goal of Licensure Act to safeguard life, health, and property and to promote public

welfare, and Act did not deny or restrict homeowners' access to courts, given that there were ample licensed engineers in Alabama who could testify, and out-of-state expert needed only to obtain certification in order to testify. U.S.C.A. Const.Amend. 14; Code 1975, § 34-11-1(7).

Amendment to Licensure Act's definition of "practice of engineering" to include giving testimony did not violate due process rights of homeowners who sought to have certified engineer intern testify as expert regarding alleged negligent design and construction of sewer system serving their home; licensing requirement was rational step toward accomplishing stated goal of Licensure Act to safeguard life, health, and property and to promote public welfare, and Act did not deny or restrict homeowners' access to courts, given that there were ample licensed engineers in Alabama who could testify, and out-of-state expert needed only to obtain certification in order to testify. U.S.C.A. Const.Amend. 14; Code 1975, § 34-11-1(7).

[19] KeyCite Notes 

⟸⟹92 Constitutional Law
   ⟸⟹92XII Due Process of Law
      ⟸⟹92k251.3 k. Reasonableness or Arbitrariness; Rational Basis and Relation to Object. Most Cited Cases

⟸⟹92 Constitutional Law KeyCite Notes
   ⟸⟹92XII Due Process of Law
      ⟸⟹92k253.2 Discrimination
         ⟸⟹92k253.2(1) k. Discrimination and Classification in General. Most Cited Cases

The due process clause is satisfied if the law bears a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory. U.S.C.A. Const.Amend. 14.

[20] KeyCite Notes

⟸⟹92 Constitutional Law
   ⟸⟹92XI Equal Protection of Laws
      ⟸⟹92k230 Licenses and License Taxes
         ⟸⟹92k230.3 Trade, Business, or Profession
            ⟸⟹92k230.3(8) Professions
               ⟸⟹92k230.3(8.1) k. In General. Most Cited Cases

⟸⟹238 Licenses KeyCite Notes
   ⟸⟹238I For Occupations and Privileges
      ⟸⟹238k7 Constitutionality and Validity of Acts and Ordinances
         ⟸⟹238k7(2) k. Equality and Uniformity in General. Most Cited Cases

Amendment to Licensure Act's definition of "practice of engineering" to include giving testimony did not violate equal protection rights of homeowners who sought to have certified engineer intern testify as expert regarding alleged negligent design and construction of sewer system serving their home; Licensure Act's identified purpose of safeguarding life, health, and property and promoting the public welfare was a proper governmental purpose, and legislature was well within its powers to conclude that offering sworn testimony regarding engineering matters constituted the practice of engineering. U.S.C.A. Const.Amend. 14; Const. Art. 1, §§ 6, 22; Code 1975, § 34-11-1 (7).

Amendment to Licensure Act's definition of "practice of engineering" to include giving testimony did not violate equal protection rights of homeowners who sought to have certified engineer intern testify as expert regarding alleged negligent design and construction of sewer system serving their home; Licensure Act's identified purpose of safeguarding life, health, and property and promoting the public welfare was a proper governmental purpose, and legislature was well within its powers to conclude that offering sworn testimony regarding engineering matters constituted the practice of engineering. U.S.C.A. Const.Amend. 14; Const. Art. 1, §§ 6, 22; Code 1975, § 34-11-1

(7).

[21] KeyCite Notes

⇐92 Constitutional Law
 ⇐92XI Equal Protection of Laws
  ⇐92k213.1 Bases for Discrimination Affected in General
   ⇐92k213.1(2) k. Rational or Reasonable Basis; Relation to Object or Compelling Interest. Most Cited Cases

When applying the rational-basis test to an equal protection challenge to a statute, a court must determine (1) whether the classification furthers a proper governmental purpose, and (2) whether the classification is rationally related to that purpose; if both factors are established, the classification does not violate the Equal Protection Clause. U.S.C.A. Const.Amend. 14; Const. Art. 1, §§ 6, 22.

[22] KeyCite Notes

⇐92 Constitutional Law
 ⇐92III Distribution of Governmental Powers and Functions
  ⇐92III(A) Legislative Powers and Delegation Thereof
   ⇐92k51 Encroachment on Judiciary
    ⇐92k55 k. Remedies and Procedure. Most Cited Cases

⇐238 Licenses KeyCite Notes
 ⇐238I For Occupations and Privileges
  ⇐238k7 Constitutionality and Validity of Acts and Ordinances
   ⇐238k7(1) k. In General. Most Cited Cases

Provision of act that amended the definition of "practice of engineering" to include giving testimony did not violate separation-of-powers doctrine of Alabama Constitution by intruding on Supreme Court's authority to adopt rules necessary to govern the judicial process; where the rules adopted by the Supreme Court conflicted with a subsequent legislative enactment, the legislative enactment took precedence. Const. Art. 3, §§ 42, 43; Code 1975, § 34-11-1(7).

Provision of act that amended the definition of "practice of engineering" to include giving testimony did not violate separation-of-powers doctrine of Alabama Constitution by intruding on Supreme Court's authority to adopt rules necessary to govern the judicial process; where the rules adopted by the Supreme Court conflicted with a subsequent legislative enactment, the legislative enactment took precedence. Const. Art. 3, §§ 42, 43; Code 1975, § 34-11-1(7).

[23] KeyCite Notes

⇐83 Commerce
 ⇐83II Application to Particular Subjects and Methods of Regulation
  ⇐83II(E) Licenses and Taxes
   ⇐83k63 Licenses and Privilege Taxes
    ⇐83k63.10 k. Particular Subjects and Taxes. Most Cited Cases



⇐238 Licenses KeyCite Notes
 ⇐238I For Occupations and Privileges
  ⇐238k7 Constitutionality and Validity of Acts and Ordinances
   ⇐238k7(6) k. Discrimination Against Nonresidents. Most Cited Cases

Provision of act amending Licensure Act's definition of "practice of engineering" to include giving testimony did not violate the Interstate Commerce Clause of the United States Constitution; Licensure Act did not prohibit out-of-state engineers from testifying in Alabama or prohibit them from serving as forensic experts, but merely required that out-of-state engineers wishing to testify obtain local certification before doing so, and the burden of registration was de minimis compared to the benefits Licensure Act, including protection of life, health, and property obtained by regulating the practice of engineering. U.S.C.A. Const. Art. 1, § 8, cl. 3; Code 1975, § 34-11-1(7).

Provision of act amending Licensure Act's definition of "practice of engineering" to include giving testimony did not violate the Interstate Commerce Clause of the United States Constitution; Licensure Act did not prohibit out-of-state engineers from testifying in Alabama or prohibit them from serving as forensic experts, but merely required that out-of-state engineers wishing to testify obtain local certification before doing so, and the burden of registration was de minimis compared to the benefits Licensure Act, including protection of life, health, and property obtained by regulating the practice of engineering. U.S.C.A. Const. Art. 1, § 8, cl. 3; Code 1975, § 34-11-1(7).


STUART, Justice.

*1 The Board of Water and Sewer Commissioners of the City of Mobile ("the Water Board") appeals from an order of the Mobile Circuit Court declaring § 34-11-1, Ala.Code 1975, unconstitutional; in that order, the trial court also enjoined enforcement of that statute. We reverse and remand.

*Factual and Procedural Background*

The plaintiffs in the trial court, James Hunter and his family members, sued the Water Board, alleging negligent design, construction, operation, and maintenance of the sanitary-sewer system that served their residence. The Hunters proffered the testimony of Roger Hicks as an expert in support of their claims. Hicks is certified as an "engineer intern" by the Board of Licensure for Professional Engineers and Land Surveyors ("the Licensure Board"). The Water Board moved to strike Hicks's testimony. The Water Board pointed out that the engineering profession is governed by Title 34, Chapter 11, Alabama Code 1975 ("the Licensure Act"). The Licensure Act sets forth those acts constituting "the practice of engineering." See § 34-11-1(7), Ala.Code 1975. The Water Board also pointed out that, in 1997 the Alabama Legislature passed Act No. 97-683, Ala. Acts 1997, which amended, among other sections, § 34-11-1(7) to include the term "testimony" within the definition of "the practice of engineering." The Water Board argued that, as a result of that 1997 amendment, Alabama law prohibited anyone from testifying under oath regarding engineering matters unless they were licensed as a "professional engineer" by the Licensure Board. Because Hicks was not a licensed "professional engineer," the Water Board argued, he was not qualified to testify as to the engineering matters at issue in this case.

The Hunters responded to this motion, presenting evidence indicating that, in the absence of § 34-11-1(7), Ala.Code 1975, Hicks would unquestionably qualify as an "expert" in this case. The Hunters argued that Hicks was trained as an engineer, that he was certified by the Licensure Board as an "engineer intern," and that he had approximately 17 years experience in sewer maintenance and related matters.[FN1] The Hunters also argued that Hicks's proposed testimony was based on his education, training, and experience and that his education, training, and experience were sufficient to qualify him as an expert witness in this case.

The Hunters also asserted that the Licensure Act was unconstitutional to the extent it purported to impose any penalty or criminal liability upon Hicks for providing opinion testimony in this case.[FN2] The Hunters also argued that the title of Act No. 97-683 failed to comply with § 45, Constitution of Alabama 1901 ("the single-subject" rule), and that the Licensure Act might have a field of operation but not to the extent of prohibiting otherwise qualified experts from testifying in a court of law. The Hunters also argued that the Licensure Act was unconstitutionally infirm on numerous other grounds.[FN3]

*2 The Hunters then moved the trial court to declare the Licensure Act unconstitutional to the extent it purported to prohibit persons from testifying regarding engineering matters in a court of law. The Hunters also requested that the trial court enjoin the enforcement of the Licensure Act to the extent that it inhibited or prevented the admission of testimony by certain individuals in an Alabama court of law.

After taking the deposition of Regina Dinger, the executive director of the Licensure Board, the Hunters amended their motion seeking to have the Licensure Act declared unconstitutional. In this amended motion, the Hunters alleged that the Licensure Act, as amended, was unconstitutionally vague because ordinary people could not understand what conduct the Act sought to prohibit. The Hunters asserted that Dinger's deposition testimony established that the Licensure Act was so vague that the Licensure Board could not even explain what conduct was prohibited by the statute.

After hearing arguments on the Hunters' amended motion, the trial court issued a 16-page order, declaring that the inclusion of the term "testimony" in § 34-11-1(7), Ala.Code 1975, created an unconstitutionally vague statute. The trial court also concluded that Act No. 97-683 violated Art. IV, § 45, Alabama Constitution of 1901. For these

reasons, the trial court enjoined any application of the term "testimony," as that term is used in § 34-11-1(7), Ala.Code 1975.

The Water Board appealed, raising the following issues:

"1. Whether Alabama Act. No. 97-683's amendment of Code § 34-11-1(7) to include 'testimony' among the services of professional engineers required to be licensed made the professional engineer licensure law unconstitutionally vague in violation of the due process provisions of the Alabama Constitution.

"2. Whether Alabama Act No. 97-683, which, among other changes, added 'testimony' to the description of services provided by professional engineers required to be licensed was inadequately titled in violation of Section 45 of the Alabama Constitution."

(Water Board's brief at 4.)

*Standard of Review*

[1] [2] [3]    "Our review of constitutional challenges to legislative enactments is de novo." *Richards v. Izzi,* 819 So.2d 25, 29 n. 3 (Ala.2001). However, we must approach this review in light of the following:

" '[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every *presumption and intendment in favor of its validity,* and seek to sustain rather than strike down the enactment of a coordinate branch of the government.' *Alabama State Fed'n of Labor v. McAdory,* 246 Ala. 1, 9, 18 So.2d 810, 815 (1944) (emphasis added). This is so, because 'it is the recognized duty of the court to sustain the act unless it is *clear beyond a reasonable doubt that it is violative of the fundamental law.'* 246 Ala. at 9, 18 So.2d at 815 (emphasis added)."

*McInnish v. Riley,* 925 So.2d 174, 178 (Ala.2005).

**\*3** [4]    Moreover, the trial court did not receive evidence ore tenus; thus, there is no presumption of correctness attached to the trial court's order.

[5]    Additionally, the facts in this case were virtually undisputed; however, the parties differed in their application of the law to those facts. The trial court's application of the law to undisputed facts is reviewed de novo. See *George v. Sims,* 888 So.2d 1224, 1226 (Ala.2004) (pure questions of law are reviewed de novo); *Ex parte C.L.C.,* 897 So.2d 234, 237 (Ala.2004) (we review de novo the trial court's conclusions of law).

[6]    We also review the trial court's grant of a permanent injunction under a de novo standard. *TFT, Inc. v. Warning Sys., Inc.,* 751 So.2d 1238, 1241 (Ala.1999).

*Applicable Code Sections*

Title 34, Chapter 11, Alabama Code 1975, regulates the engineering profession in this State. Section 34-11-2(a), Ala.Code 1975, provides:

"No person in either public or private capacity shall practice or offer to practice engineering ···, unless he or she shall first have submitted evidence that he or she is qualified so to practice and shall be licensed by the board as hereinafter provided····"

Section 34-11-1(7), Ala.Code 1975, as amended in 1997, defines "the practice of engineering" as:

"Any professional service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation, *testimony,* investigation, evaluation, planning, design and design coordination of engineering works and systems, planning the use of land and water, performing engineering surveys and studies, and the review of construction or other design products for the purpose of monitoring compliance with drawings and specifications; any of which embraces such services or work, either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, projects, and industrial or consumer products; equipment of a control, communications, computer, mechanical, electrical, hydraulic, pneumatic, or thermal nature, insofar as they involve safeguarding life, health, or property; and including other professional services necessary to the planning, progress, and completion of any engineering services."

(Emphasis added.) Section 34-11-15(a), Ala.Code 1975, makes it a Class A misdemeanor for anyone to practice, offer to practice, or hold himself or herself out as qualified to practice engineering within this state without being licensed by the Licensure Board.

Additionally, Regulations 330-X-2-.01(2) and 330-X-2-.01(19), Alabama Administrative Code (Alabama State Board of Registration for Professional Engineers and Land Surveyors), provide additional guidance on the meaning of the terms used in the Licensure Act.[FN4]

*Discussion*

***4** We first address the trial court's conclusion that Act No. 97-683 violated § 45, Ala. Const.1901, known as "the single-subject rule." That section provides in part: "Each law shall contain but one subject, which shall be clearly expressed in its title····"

The title to Act No. 97-683, the act amending § 34-11-1, Ala.Code 1975, provides as follows:

"To amend Sections 34-11-1, 34-11-2, 34-11-3, 34-11-4, 34-11-5, 34-11-6, 34-11-7, 34-11-8, 34-11-9, 34-11-11, 34-11-12, 34-11-14, 34-11-15, 34-11-30, 34-11-31, 34-11-32, 34-11-34, 34-11-35, 34-11-36, 34-11-37, and 11-6-21 of the Code of Alabama 1975, which relate to the regulation and registration of professional engineers and land surveyors; to rename the board; to regulate the registration and fees, with expiration and renewal requirements for registration; to provide further for the issuance of certificates of authorization to certain corporations, partnerships, or firms practicing engineering or land surveying; to regulate further the compensation, powers, and duties of the members of the board; to regulate corporate practices, and to provide for penalties."

In concluding that Act No. 97-683 violated § 45, the trial court stated:

"Act [No.] 97-683 was a long act modifying administrative provisions pertaining to the regulation and registration of professional engineers and land surveyors. Nowhere in the title of the act does it alert a legislator or the public that the act would expand the definition of the practice of engineering to include testimony as an expert witness. Nowhere in the title of the act does it state that it would preclude testimony by engineers who are not licensed by the Alabama Board of Licensure for Professional Engineers and Land Surveyors.

"Article IV, section 45, of the Constitution of Alabama 1901 declares that '[e]ach law shall contain but one subject, which shall be clearly expressed in its title.' The purpose of § 45 is well understood:

" 'The object of the constitutional provision has been held to be threefold, first, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, and in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire; second, truly to inform the members of the legislature who are to vote upon the bill, what the subject of it is so that they may not perform that duty, deceived or ignorant of what they are doing; and third, to prevent the practice of embracing in one bill several distinct matters, none of which, perhaps, could singly obtain the assent of the legislature, and then procuring its passage by a combination of the minorities in favor of each of the measures, into a majority that will adopt them all. *Lindsay v. United States Savings & Loan Ass'n,* 120 Ala. 156, 24 So. 171, 42 L.R.A. 783; *Walker v. Griffith,* 60 Ala. 361.' *State v. Hester,* 260 Ala. 566, 72 So.2d 61 (1954).'

***5** " *Bagby Elevator & Elec. Co. v. McBride,* 292 Ala. 191, 194, 291 So.2d 306, 308 (1974) (emphasis added); *Opinion of the Justices,* 270 Ala. 38, 115 So.[2d] 464 (1959); and *Ex parte Rice,* 265 Ala. 454, 92 So.2d 16 (1957).

"More simply: 'The purposes of this section are "(a) notification to the public of the nature of the pending legislation; (b) avoidance of fraud on the legislature by inadvertent passage of provisions not related to the title; and (c) prevention of logrolling legislation." ' *Opinion of the Justices No. 323,* 512 So.2d 72, 77 (Ala.1987) (citation omitted). See also *Ex parte Springer,* 619 So.2d 1267, 1268 (Ala.1992) (citations omitted); *Houston County Bd. of Revenue v. Poyner,* 236 Ala. 384, 182 So. 455 (1938); *City of Marion v. Underwood,* 231 Ala. 225, 164 So. 296 (1935); *State ex rel. Earp v. McCary,* 128 Ala. 139, 30 So. 641 (1901); *Key v. Jones,* 52 Ala. 238 (1875); *Ex parte Pollard,* 40 Ala. 77 (1866).

"Act [No.] 97-683, by adopting without notice in its title a provision with the far-reaching effect of precluding testimony on subjects within the field of engineering if the witness is not licensed as a professional engineer in Alabama, violates all three of the purposes of Section 45. First, the title gave no notice to the public of the nature of the pending legislation. Second, the subject of testimony was not referred to in the title and was not related to the subjects that were referred to in the title, so there is the very real possibility of fraud on the Legislature by inadvertent passage of provisions not related to the title. Third, the accomplishment of such a far-reaching change in the law of evidence by an act regulating the practice of engineering and land surveying would fly in the face of Section 45's purpose of preventing logrolling legislation. Providing for admissibility of testimony in court is a very distinct matter from the regulation of the practice of engineering and the former, 'perhaps, could [not] singly obtain the assent of the legislature.' *Bagby Elevator,* supra. The subtle and undisclosed inclusion of the subject of court testimony by expert witnesses within a bill regulating the practice of engineering violates the very heart of the prohibition against hodgepodge of logrolling legislation.

"The title of Act [No.] 97-683 does state that the act would amend § 34-11-1, along with twenty other sections of the Code of Alabama, but that information is not sufficient to give notice to the legislature of the public that the act would preclude the giving of testimony. 'All understand the principle that a Code section may be amended without violating section 45, by an act entitled "An Act to Amend" that Code section, *provided the amendatory matter is germane to the subject matter of that Code section or some part of it.' Ex parte Boyd,* 796 So.2d 1092, 1098 (Ala.2001) (citations omitted; emphasis added.) 'Matter wholly foreign to the original section, is violative of Section 45, and to that extent the amended section inoperative.' *Ex parte Boyd,* 796 So.2d at 1098, quoting *Davis v. City of Tuscambia [Tuscumbia],* 236 Ala. 552, 555, 183 So. 657, 659 (1938).

***6** "Before 1997, it could not be said that the subject of qualification to testify as an expert engineering witness was

germane to the subject of the regulation by an Alabama administrative body of engineers licensed to practice in Alabama. The Court of Civil Appeals expressly held in *Federal Mogul Corp. v. Universal Construction Co.*, 376 So.2d 716 (Ala.Civ.App.1979), that 'the trial judge improperly equated lack of licensure with lack of licensure with lack of expertise.' 376 So.2d at 721-22. Under the holding of *Federal Mogul*, the subject of testimony by an expert witness on engineering subjects was not 'germane to the subject matter rule' of § 34-11-1 et seq. Amended § 34-11-1(7) had the effect of overruling *Federal Mogul*, superseding Rule 702 of the Alabama Rules of Evidence, and overruling many other cases holding that an expert witness is qualified by experience, training, knowledge, and expertise, not by licensure. The title of Act [No.] 97-683 says nothing about overruling and superseding that vast body of law. The bare references in the title to § 34-11-1 cannot be said 'to clearly express' the subject of adding 'testimony' to § 34-11-1(7) when an appellate court had held that the subject of qualification to give testimony as an engineering expert was unrelated to the subject of licensure as an engineer.

"The Court therefore holds that Act [No.] 97-683 violated Section 45 of the Constitution of Alabama of 1901 to the extent that it required an expert engineering witness in an Alabama court to be licensed by the Alabama Board of Licensure of Professional Engineers and Land Surveyors. The subject of giving such testimony was not remotely referred to in the title of Act [No.] 97-683, nor was that subject germane to or related to the subjects that were already covered in § 34-11-1, et seq."

[7]  [8]    The Water Board appeals from this portion of the trial court's ruling and argues that the title of an amendatory act need only identify that it is "An Act to Amend" so long as (1) it identifies the statute being amended and (2) the substance of the amendment is germane to the existing statute. We agree with this statement of the law, and we conclude that Act No. 97-683 met these requirements.

In *Ex parte Boyd*, 796 So.2d 1092, 1098 (Ala.2001), this Court stated:

" 'Without question a Code section may be amended under a title naming the Section amended, followed by an Act setting out the Section as amended.

" 'But the subject matter of such amendment must be germane or supplemental to that of the original section, so that the legislators and inquiring public may reasonably anticipate and look into the proposed change. Matter wholly foreign to the original section is violative of Section 45 and to that extent the amended section is inoperative.' " (Quoting *Davis v. City of Tuscumbia*, 236 Ala. 552, 555, 183 So. 657, 659 (1938).) Before the 1997 amendment, the existing § 34-11-1, Ala.Code, included a definition of the "practice of engineering." The title to Act No. 97-683 indicated its intent to amend a number of Code sections, including § 34-11-1. By passing Act No. 97-683, the legislature amended the then existing definition of the "practice of engineering" to include giving testimony on certain matters relating to engineering. Thus, Act No. 97-683 indicated that its purpose was to amend the existing Code sections pertaining to the "practice of engineering," and that is the very effect the amendment had on the existing Code section. We fail to see how an act, designated as an amendatory one, that modifies the definition contained in the existing Code section can be construed as anything but germane or complementary to the existing statute.

*7 The Hunters next argue that, before the effective date of Act No. 97-683, offering an expert opinion on engineering matters was not considered germane to the practice of engineering based on Alabama caselaw at that time. In support of this argument, the Hunters rely on *Federal Mogul Corp. v. Universal Construction Co.*, 376 So.2d 716 (Ala.Civ.App.1979), in which the Alabama Court of Civil Appeals held that a lack of a license as a professional engineer did not necessarily equate to a lack of qualifications to testify as an expert witness. We find no support for the Hunters' position in that case.

In *Federal Mogul*, the plaintiff sued a contractor over a defective roof. The plaintiff then hired an out-of-state engineering firm to draft new specifications for the roof; the plaintiff also hired an out-of-state contractor to replace the roof. At trial, the plaintiff sought to introduce testimony of the out-of-state engineers regarding the new specifications and the details of the contract for the replacement roof. Upon the defendant's objection, the trial court refused to allow the proffered testimony. The trial court concluded that the information obtained by the engineers was a direct result of engaging in the illegal activity of practicing as an architect or engineer in Alabama without a license. The trial court also concluded that, because the contractor hired to replace the roof was not licensed in Alabama, the contract to replace the roof was void and unenforceable and, therefore, incompetent as evidence.

On appeal, the Court of Civil Appeals stated that "the defense of illegality, although open to the parties and those claiming under them, cannot as a general rule be invoked by third parties." *Federal Mogul*, 376 So.2d at 721. The court also stated:

"[W]e note that the overall effect of the ruling below is to require proof of proper licensure as a condition precedent to the giving of expert testimony in the field of engineering. Such a rule does not comport with the practice followed by Alabama courts. Generally, if by training, study, observation, practice, experience, or profession the witness has acquired a knowledge in a particular field beyond that of ordinary laymen, he has earned the appellation 'expert' in that field····

"Furthermore, our decisions hold that experience and practical knowledge may qualify one to make technical judgments as readily as formal education. *International Telecommunications System[s] v. State*, Ala., 359 So.2d

364 (1978). In *International,* the purported expert's qualifications were attacked on the grounds that he had no engineering degree and little formal training. Our supreme court, through Justice Beatty, noted that practical experience and affirmed the admission of his opinion, indicating any other course would have been improper." *Federal Mogul, 376 So.2d at 721.*

The Hunters argue that, based on *Federal Mogul,* supra, "it cannot be said that, as of the time of the proposed amendment to § 34-11-1 in 1997, the subject of an engineer testifying in litigation in a court of law was 'germane to the subject matter,' ··· of the Code sections regulating the practice of engineering." (Hunters' brief at 27.) Thus, the Hunters argue, the 1997 amendment to the Licensing Act ran afoul of § 45.

*\*8* We do not interpret the *Federal Mogul* case in such a far-reaching manner. In *Federal Mogul,* the Court of Civil Appeals was not considering the enforceability of a legislative enactment specifically requiring a license in order to testify as to engineering matters. This fact alone distinguishes *Federal Mogul* from the case before us.

Additionally, we have already concluded that, for purposes of the § 45 claim, Act No. 97-683, which sought, among other things, to modify the existing definition of the "practice of engineering," is, by its very nature, germane to the existing statute. The legislature has the power and authority to define the practice of engineering as it sees fit. It is not for this Court to question the wisdom of the legislative amendment, particularly when determining whether the requirements of § 45 have been met.

The Hunters also argue that existing Alabama caselaw establishes that the evaluation done in a professional context, solely and exclusively for use in court proceedings, does not constitute "the practice of" the profession involved. The Hunters cite *Wood v. State,* 891 So.2d 398 (Ala.Crim.App.2003) (the evaluation of a criminal defendant by a psychologist unlicensed in the State of Alabama for purposes of testifying in court did not constitute "the practice of psychology"); *Mitchell v. Mitchell,* 830 So.2d 755, 758 (Ala.Civ.App.2002) (holding that psychologist who did not hold an Alabama license to practice psychology did not engage in "the practice of psychology" by testifying in a court of law and thus did not violate the licensing requirements of the Alabama Code; "Nothing in § 34-26-1[, Ala.Code 1975,] would lead one to conclude that testifying is a function of practicing psychology."); see also *Dickerson v. Cushman,* 909 F.Supp. 1467 (M.D.Ala.1995).

However, in none of those cases had the legislature expressly defined "the practice of" that profession to include giving testimony on matters related to the profession. Thus, those cases are readily distinguishable from this case. Next, the Hunters argue that Act No. 97-683 violated the single-subject rule of § 45 because the title gave no notice to the legislature of the significance of the changes proposed within that Act. The Hunters argue that the title to that Act made no mention of expanding, in such a broad and drastic fashion, the definition of the "practice of engineering"; they also argue that the title of Act No. 97-683 said nothing about purporting to regulate the admission of evidence in a court of law.

We agree with the Hunters that, in addition to impacting the practice of engineering, the amendment to § 34-11-1 (7), Ala.Code 1975, impacts upon and is germane to other subjects. Specifically, by adopting Act No. 97-683, the legislature superimposed the licensing requirement contained therein onto Rule 702, Ala. R. Evid. Before the adoption of Act No. 97-683, Rule 702 allowed trial courts wide discretion in determining when a proffered witness was qualified as an expert on all matters, including engineering matters. However, after the adoption of Act No. 97-683, the trial court no longer had the discretion to allow testimony on engineering matters unless the witness was a licensed engineer in this State.

*\*9* Because Act No. 97-683 impacted, in addition to licensing requirements for engineers, the application of Rule 702 in certain circumstances, the Hunters argue, Act No. 97-683 introduced a new and unrelated subject into § 34-11-1, Ala.Code. This, they argue, violated the single-subject rule of § 45.

[9]     We disagree with this unduly narrow characterization of the requirements of § 45. In *Smith v. Industrial Development Board of Andalusia,* 455 So.2d 839 (Ala.1984), this Court stated:

"The title of an act need not be an index of all the provisions contained therein···· Section 45 requires only that the title not be 'so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment.' *Alabama Education Ass'n v. Grayson,* 382 So.2d 501, 506 (Ala.1980), citing *Pillans v. Hancock,* 203 Ala. 570, 84 So. 757 (1919). This Court has always given a liberal construction to the provisions of § 45 and will not abandon this guiding principle in the present case."

455 So.2d at 841. If the title to an act is not required to index all of the provisions contained in that act, the title to an amendatory act surely is not required to list, in an exhaustive fashion, all of the subjects that might be secondarily impacted by the amendments proposed by the act. See also *Ex parte Boyd,* 796 So.2d at 1098 (" 'Without question a Code section may be amended under a title naming the Section amended, followed by an Act setting out the Section as amended.' " (quoting *Davis v. City of Tuscumbia,* 236 Ala. 552, 555, 183 So. 657, 659 (1938))). Because Act No. 97-683 identified the statute to be amended and because the subject of that amendment was germane to the subject matter of that statute, our inquiry into the matter is complete. We need not engage in the possibly endless debate as to what other subjects might also be impacted by that Act.

[10]     [11]     In fact, requiring that the title to an act identify every area or subject that might be impacted by

an amendment would cripple the legislative process, a result we must avoid when applying § 45.
"Section 45 of the Constitution of 1901 should be liberally and reasonably construed to permit the legislature to operate without undue strictures on its prerogatives. It should not be exactingly enforced to cripple legislation. Its purpose is to prevent fraud and surprise on the legislature by prohibiting measures in a bill not reflected in its title. This purpose is served so long as the subject matter included in the bill is germane to, cognate with, or complementary to the idea expressed in the title."
*Opinion of the Justices No. 307*, 449 So.2d 237, 238 (Ala.1984) (citations omitted).
We recognize that *Clutts v. Jefferson County Bd. of Zoning Adjustment*, 282 Ala. 204, 210 So.2d 679 (1968), appears to require that a statute "confine" itself to only one topic and that it could be argued that Act No. 97-683 violated § 45 as a result of its secondary impact upon areas other than the subject of engineering. However, the legislature adopted the amendment and thereby decided that a license was required in order to testify as to certain matters falling within the "practice of engineering." Simply because this requirement might also secondarily impact the application of certain rules adopted by this Court does not compel the conclusion that the amendatory act improperly included matters "wholly foreign" and unconfined to the existing statute.
*10 Additionally, the language of the amendment *was* confined to the subject of engineering. That amendment does not purport to require a license for anything other than the practice of engineering, as defined in Act No. 97-683. Therefore, we find no conflict with the rationale of *Clutts,* supra.
The title to Act No. 97-683 identified the Code section to be amended. Additionally, the substance of that amendment was germane to the subject of the existing Code section. Our inquiry under § 45 ends there. We conclude that Act No. 97-683 is not constitutionally infirm on the basis of Article IV, § 45, Ala. Const.1901.

### The Hunters' Void-for-Vagueness Argument

We must next determine whether the trial court erred in declaring § 34-11-1, Ala.Code 1975, as amended in 1997, unconstitutionally vague. In addressing the Hunters' vagueness claim, the trial court stated:
"The constitutional right to due process that is guaranteed under the Constitution of Alabama of 1901, §§ 6 and 13, 'is violated when a statute or regulation is unduly vague.' *Ross Neely Express, Inc. v. Alabama Dep't Envtl. Mgmt.,* 437 So.2d 82, 84 (Ala.1983).' *Alabama Dep't Envtl. Mgmt. v. Legal Environmental Assistance Fndn., Inc.,* 922 So.2d 101, 114 n. 3 (Ala.Civ.App.2005). 'A state's legislative enactment is void for vagueness under the due process clause of the fourteenth amendment if it is inherently standardless, enforceable only in the exercise of an unlimited, and hence arbitrary, discretion vested in the state.' *Margaret S. v. Edwards*, 794 F.2d 994, 999 (5th Cir.1986). 'A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and the attendant dangers discriminatory application.' *Mason v. Florida Bar,* 208 F.3d 952, 959 (11th Cir.2000), citing *Grayned v. City of Rockford,* 408 U.S. 104, 108-09[, 92 S.Ct. 2294, 33 L.Ed.2d 222] (1972).
"In this case, the official minutes of the Board of Professional Engineers and Land Surveyors and the testimony of the Board's executive director and Rule 30(b)(6) representative reflect that the statute is so vague, indefinite, and imprecise that the members of the Board-those who are charged by the legislature with the power to decide whether violations of the statute have occurred and to impose punishment for such violations-can decide when the law is violated only after the fact and only on a 'case-by-case basis.'
"The official minutes of the meeting on October 29, 2004, of the Board of Directors of the Board of Professional Engineers and Land Surveyors state that the Board will decide 'on a case-by-case basis' whether testimony constitutes the practice of engineering:
" 'The Board discussed what aspects of testimony should fall under the definitions of the practices of engineering and surveying. The discussions involved the Board's function versus the judges having the responsibility to determine who are classified as expert witnesses. *The Board determined that each case had to be handled on a case-by-case basis.'*
*11 "Dinger depo. Exhibit 28···· This decision by the Board to decide on a case-by-case basis whether the statute has been violated demonstrates that the statute gives so little guidance to the Board that the Board is free to exercise its enforcement power arbitrarily.
"Indeed, the evidence developed during the deposition of the Board's executive director and Ala. R. Civ. P. 30(b)(6) representative, Mrs. Regina Dinger, demonstrates in some detail the extent to which the statute allows the Board to decide arbitrarily whether to charge a person with violating it. When Mrs. Dinger was asked to explain what conduct was proscribed by this statute, she was unable to do so.
"Mrs. Dinger was first qualified as the person with the highest and best knowledge about the Board's construction and application of the statute:
"....
"Despite being most qualified to answer for the Board as its representative, Mrs. Dinger was unable to answer basic questions about whether common, everyday practices are now subject to prosecution because of the 1997 amendment of the statute that included 'testimony' within the practice of engineering. For example, Mrs. Dinger was unable to answer whether expert testimony regarding accident reconstruction work in civil litigation would require licensure as an engineer. 'I would have to say it would depend.' (Dinger depo. 22/11). According to Mrs. Dinger, a

plumber testifying why there was a sewage backup would not have to be licensed if he could give his testimony based on 'a visual inspection,' but Mrs. Dinger 'wouldn't be able to tell' whether he was practicing engineering (and would therefore have to be licensed as an engineer to testify) if the plumber could not see the problem without actually digging up all of the pipe. According to Mrs. Dinger, if an Alabama citizen whose car catches on fire asks a mechanic to give an opinion as to why the carburetor caught on fire, it 'may or may not be a decision based on engineering principles as to how he rendered his decision,' but she could not answer when 'it would be engineering in violation of the statute as opposed to where it wouldn't be.'

"Mrs. Dinger testified that common investigations of the causes and origins of fires involve the practice of engineering, but she could not identify any Alabama fire marshals or state fire investigators who are licensed engineers. When asked whether the author of the National Electric Safety Code would be able to testify about the requirements of that code without licensure as an engineer, Mrs. Dinger answered, 'I wouldn't be able to tell you.'

"There is no indication as to how testimony by an expert witness threatens the health, welfare, or safety of any Alabama residents. Dinger depo., 58-59. As to the rationale for including testimony in the definition of the practice of engineering, Ms. Dinger could testify only that 'the primary purpose of the Board is to protect the health, safety and public welfare of the individuals of the state.' _Id._ at 56. Thus, the statute makes 'no distinction between conduct that is calculated to harm and that is essentially innocent.' Indeed, if the enforcers of the statute cannot identify any conduct that is harmful that is governed by the statute, it exclusively allows prosecution of conduct that is 'entirely innocent.' More to the point, as demonstrated in Ms. Dinger's deposition and in the amicus curiae's brief, the enforcement of this statute is 'subject to the unfettered discretion of' the Board of Licensure. Thus, Plaintiffs, Mr. Hicks, and amicus curiae have standing to challenge this statute as allowing arbitrary enforcement, even if it may be deemed to 'facially' apply to Mr. Hicks's proposed testimony, just as Mr. Horn was entitled to challenge the ordinance that facially applied to his 'entirely innocent' behavior that subjected him to 'arbitrary law enforcement.' _Horn [v. City of Montgomery,_ 619 So.2d 949,] at 951 [ (Ala.1993) ].

**\*12** "For the reasons stated, the Court holds that the word 'testimony' in amended § 34-11-1(7), Ala.Code 1975, is void for vagueness and thus violates article I, §§ 6 and 13, of the Constitution of Alabama of 1901." (Citations to record omitted.) We reject this analysis.

[12]   [13]   The United States Supreme Court has stated:

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement. _Chicago v. Morales,_ 527 U.S. 41, 56-57 (1999)." _Hill v. Colorado,_ 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). However, in order to challenge a statute on the basis of vagueness, the challenger must first have standing to do so.

Opinions from the United States Supreme Court establish that a litigant has no standing to assert a vagueness claim against a statute if that litigant's conduct is clearly proscribed by that statute. See _Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,_ 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." (footnote omitted)); see, e.g., _Parker v. Levy,_ 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); _Broadrick v. Oklahoma,_ 413 U.S. 601, 611, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ("Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before this Court.").

In addition to the above pronouncements of the United States Supreme Court on the issue of standing, this Court has recognized:

" '[B]ecause "[t]he essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct," "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness," "even though the statute may well be vague as applied to others." Therefore, a defendant who challenges a statute on the grounds of vagueness "must demonstrate that the statute under attack is vague _as applied to his own conduct,_ regardless of the potentially vague application to others." ' " _Hunt v. State,_ 642 So.2d 999, 1027-28 (Ala.Crim.App.1993) (quoting _Senf v. State,_ 622 So.2d 435, 437 (Ala.Crim.App.1993); citations omitted). See also _Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n,_ 294 Ala. 173, 178, 314 So.2d 51, 56 (1975) ("Where a particular litigant is not within the group of persons affected by a statute or portion thereof which is allegedly unconstitutional, such litigant lacks standing to raise such constitutional issue."); _Kid's Stuff Learning Ctr., Inc. v. State Dep't of Human Res.,_ 660 So.2d 613, 620 (Ala.Civ.App.1995) ("One who challenges a regulation as being unconstitutionally vague or overbroad must be directly affected by the statute's alleged vagueness···· Therefore, even if the regulation could, in some other set of circumstances, be considered vague, it was not vague as to [the appellant]. [The appellant] is not in a position to argue the vagueness or overbreadth of the regulation as it might apply to other parties, when the regulation was not vague as to [the

appellant].").

**\*13** These cases establish that, in order to challenge a statute for vagueness, the challenger must fall within the group of persons affected or possibly affected by the statute. At a minimum, the challenger must have a concern that the statute might be unconstitutionally applied to him or her. However, in the case before us, the Licensure Act is not directly applicable to the Hunters. There is no question whether they are engaging in the "practice of engineering"; additionally, there is no question that the Hunters are not subject to the licensing requirement under the Licensure Act. Additionally, the Licensure Board has not attempted to prosecute the Hunters for an alleged violation of the Licensure Act. Thus, the Hunters are not even within the class of persons to whom the Licensure Act is directed, much less affected by its alleged vagueness.

[14]    We next consider whether the Hunters have standing to challenge the Licensure Act for vagueness as that Act is applied to others. Such a challenge is a "facial challenge," which is defined as "[a] claim that a statute is unconstitutional on its face-that is, that it *always* operates unconstitutionally." *Black's Law Dictionary* 244 (8th ed.2004) (emphasis added).

However, Hicks, the Hunters' proffered expert witness, unquestionably falls within the proscription of the Licensure Act. It is undisputed that Hicks is not licensed as an engineer; it is also undisputed that Hicks's attempted to offer sworn testimony regarding engineering matters. Because Hicks falls squarely within the prohibition of the Licensure Act, the Hunters cannot successfully assert their facial challenge to the Licensure Act.

However, the Hunters rely heavily on *City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)*, as support for their argument that they have the necessary standing to challenge the Licensing Act because, they say, the statute is so permeated with vagueness as to be unconstitutional. The trial court obviously was persuaded by these arguments; we are not.

In *City of Chicago,* supra, the United States Supreme Court addressed an antiloitering ordinance, which prohibited any person the police reasonably believed to be a member of a gang from loitering in a public place with one or more persons. The ordinance defined "loiter" to mean "to remain in any one place with no apparent purpose." See 527 U.S. at 47, 119 S.Ct. 1849, quoting Chicago Municipal Code § 8-4-015.

The United States Supreme Court held that the ordinance failed to provide adequate notice to the public as to what conduct it sought to prohibit. The Court held that what was an "apparent" purpose was purely subjective and required a subjective interpretation by the law officer on the scene. Therefore, Chicago citizens had no way of knowing if the purpose for their remaining in one place was or was not apparent to law enforcement, until it was too late to avoid violating the ordinance. The Court concluded that the ordinance was unconstitutional because (1) it was so vague and standardless that it left the public uncertain as to the conduct it prohibited, and (2) it authorized and even encouraged arbitrary and discriminatory enforcement because it lacked definite standards for law enforcement to follow. "When vagueness permeates the text of such a law, it is subject to facial attack." *City of Chicago, 527 U.S. at 55, 119 S.Ct. 1849* (footnote omitted).

**\*14** However, the Licensure Act has none of the indicia of vagueness found in the ordinance declared unconstitutional in *City of Chicago.* The Licensure Act is specific enough to allow the public to discern what conduct it seeks to prohibit; the statute unequivocally prohibits the "practice of engineering" without a license. Unlike the ordinance in *City of Chicago,* which required an officer to make a subjective determination of what constituted "loitering," the Licensure Act contains a detailed and objective definition of the "practice of engineering." This definition provides sufficient notice to the public as to the conduct the Licensure Act prohibits.

[15] [16]    Simply because the Licensure Act requires specialized knowledge to properly apply the statute does not compel the conclusion that it is void because it is vague.

" ' "Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced." ' The judicial power to declare a statute void for vagueness 'should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of the known and accepted rules of construction, to determine with any reasonable degree of certainty, what the legislature intended.' "

*Vaughn v. State,* 880 So.2d 1178, 1195-96 (Ala.Crim.App.2003) (citations omitted). As evidenced by the fact that the Licensure Act clearly applies to Hicks, the Licensure Act does not rise to the level of vagueness found to exist in *City of Chicago.*

Additionally, we can find no arbitrary or discriminatory enforcement of the Licensure Act. The definition of the "practice of engineering" is definite enough to allow an objective determination as to whether a person has engaged in that practice as defined. If the person engages in that practice without obtaining a license, he or she has violated the statute. This is in sharp contrast to the abstract and subjective analysis required by law enforcement in *City of Chicago,* supra, to determine whether the alleged loiterer had an apparent purpose for remaining in one place. Moreover, if a person has any uncertainty as to whether his or her proposed testimony falls within the meaning of the "practice of engineering," the Licensure Act allows him or her to obtain an advisory opinion from the Licensure Board as to whether the statute has or will be triggered. See Regulation 330-X-1-.12, Ala. Admin. Code (Alabama

State Board of Registration for Professional Engineers and Land Surveyors). Thus, a person wanting to testify to engineering matters within this State need not wait until after the testimony to determine whether it runs afoul of the Licensure Act. This again is in sharp contrast to the ordinance considered in *City of Chicago.* We can find no deficiency in the Licensure Act based on the notice provided to the public by the Act or in the standards established for enforcement of that Act.

**\*15** [17]        Additionally, it cannot be questioned that the Alabama Legislature has the power to regulate professions and to classify the activities subject to regulation as part of that profession. See, e.g., *McCrory v. Wood, 277 Ala. 426, 171 So.2d 241 (1965)* (recognizing that the Alabama Legislature has the power to regulate the practice of optometry); *State of Alabama ex rel. Attorney General v. Spann,* 270 Ala. 396, 400, 118 So.2d 740, 743 (1960) (acknowledging that the State has the power to regulate the practice of architecture; "We believe that it is within the discretion of the legislature to determine at what point licensing is to begin and at what point it shall end."); § 34-3-6, Ala.Code 1975 (requiring a license in order to practice law in Alabama); § 6-5-540 et seq., Ala.Code 1975, the "Alabama Medical Liability Act" (requiring, among other things, that any person wishing to testify as an expert witness for or against a defendant physician in a medical-malpractice action be a "similarly situated health care provider," i.e., must be licensed as a physician). Thus, it cannot be seriously disputed that the Alabama Legislature had the right to regulate the practice of engineering and to establish a credentialing requirement for engineers, if it saw fit.

In essence, the legislature has established that the minimum level of expertise required to qualify as an expert on engineering matters within Alabama is the same level required to obtain a license in Alabama. The legislature has the power to establish such standards. The Licensure Act no more infringes on constitutional rights than did the Alabama Medical Liability Act, which has passed constitutional muster. See *Plitt v. Griggs,* 585 So.2d 1317 (Ala.1991) (applying the rational-basis test to uphold the Alabama Medical Liability Act against an equal-protection challenge).

In support of their vagueness challenge, the Hunters rely on out-of-state decisions in which the courts concluded that, despite the wording of that state's licensing act, a witness need not hold an engineering license in order to testify as an expert in a court of law. See *Thompson v. Gordon,* 356 Ill.App.3d 447, 293 Ill.Dec. 102, 827 N.E.2d 983 (2005); *Baerwald v. Flores,* 122 N.M. 679, 930 P.2d 816 (Ct.App.1997).[FN5] These cases, however, are merely persuasive authority, and we decline to follow them.

We also disagree with the emphasis placed by the trial court on Regina Dinger's deposition testimony. In its deposition notice served pursuant to Rule 30(b)(6), Ala. R. Civ. P., the Hunters did not request to depose a Water Board representative with expertise in engineering matters, or anyone capable of interpreting the "practice of engineering," or anyone capable of rendering an opinion on actual or alleged violations of the Licensure Act. Had the Hunters wished to obtain more definitive information regarding the Board's interpretation and application of the Licensing Act, they could have done so by deposing one or more of the members of the Licensure Board.

**\*16** Additionally, Dinger is not an engineer, and at her deposition she expressly disclaimed the ability to determine who should be licensed under the Licensure Act. Ms. Dinger testified:

"I don't render the opinion on anybody's qualifications for licensure. That's not what my responsibility is. That's what my Board members' responsibilities are. I process the applications. I can't render the decisions on competency of who becomes licensed. That's a ··· matter for the Board to render that decision."

In response to hypothetical situations posed by the Hunters' counsel, Dinger offered her *personal* opinions as to the proper interpretation of the Licensure Act. For these reasons, we will not rely on Dinger's application of the Licensure Act to hypothetical situations to undermine what we conclude is an otherwise valid legislative act.

We find the reasoning of *Toussaint v. State Board of Medical Examiners,* 303 S.C. 316, 400 S.E.2d 488 (1991), applicable to this case. In that case, a physician was charged with "unprofessional conduct" as defined by a statute directed at the regulation of physicians in South Carolina. The physician challenged that statute as unconstitutionally vague. However, the Supreme Court of South Carolina rejected these arguments:

"The constitutional standard for vagueness is the practical criterion of fair notice to those to whom the law applies. When the persons affected by the law constitute a select group with a specialized understanding of the subject being regulated, the degree of definiteness required to satisfy due process is measured by the common understanding and knowledge of the group. One to whose conduct the law clearly applies does not have standing to challenge it for vagueness."

303 S.C. at 320, 400 S.E.2d at 491 (citations omitted). The Supreme Court of South Carolina held that, when considered in light of the specialized knowledge and understanding of physicians, the statute was sufficiently definite to notify physicians-the select group to which the statute was directed-of those actions prohibited by the statute. *Id.* Like the statute at issue in *Toussaint,* the Licensure Act is sufficiently definite for engineers, the group of persons to whom it is addressed, to understand and apply its terms. For the above-stated reasons, we conclude that the Licensure Act provides sufficient notice of the conduct it seeks to prohibit. Additionally, the Licensure Act does not authorize or encourage arbitrary enforcement. We therefore conclude that the trial court erred in declaring § 34-11-1, Ala.Code 1975, unconstitutionally vague.

*Other Constitutional Issues Asserted by the Hunters*

Because of our conclusion that the Licensure Act is not unconstitutionally vague, we must consider the Hunters' other constitutional arguments to determine whether they provide a basis on which to affirm the trial court's ruling. The Hunters argue that the Licensure Act, as applied in this case, violates the following sections of Article I of the Constitution of Alabama of 1901: § 6 (addressing the right of an accused to confront witnesses and to have compulsory process for obtaining witnesses); § 10 ("no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party"); and § 13 ("all courts shall be open" and "every person ⋯ shall have a remedy by due process of law" and "justice shall be administered without sale, denial or delay.").

**\*17** [18]   The Hunters also argue that application of the Licensure Act violates the Due Process Clause of Amendment XIV of the United States Constitution because (1) it prevents a party from obtaining witnesses in his or her favor; (2) it authorizes a biased decision-maker; (3) it bars a person from prosecuting or defending a civil cause in the courts; (4) it prevents justice from being administered "without sale, denial or delay"; and (5) it unconstitutionally criminalizes testimony.

[19]   We reject these arguments. "The due process clause is satisfied if the law bears a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory." *Fowler v. State*, 440 So.2d 1195, 1198 (Ala.Crim.App.1983). The practice of engineering affects the public interest, health, and welfare and falls under the police power of the state. See § 34-11-2(b), Ala.Code 1975 (recognizing that engineering is a learned profession and that "[i]n order to safeguard life, health, and property, and to promote the public welfare," the practice of engineering is subject to regulation in Alabama); see also *Wheeler v. Bucksteel Co.*, 73 Or.App. 495, 500, 698 P.2d 995, 997 (1985) ("The dangers of incompetent engineers to the public at large are obvious. The law provides for thorough regulation of the profession in order to maintain the necessary standards of competence and ethical behavior."). A licensing requirement is a rational and reasonable step toward accomplishing the stated goal of the Licensure Act: to safeguard life, health, and property and to promote the public welfare.

Nor is there an arbitrary or discriminatory effect from the Licensure Act sufficient to work a deprivation of due process. The Hunters' claim that the Licensure Act allows for a local prejudice is pure speculation; the Hunters have presented no evidence to support this claim. In contrast, the Water Board argued that the approval rate for out-of-state applicants seeking an Alabama engineering license is 99.16%, and the Hunters have not challenged that statement.

Additionally, the Alabama Legislature has elected to regulate, among many other professions, physicians, lawyers, architects, certified public accountants, as well as engineers. However, simply because the legislature has not enacted identical licensing requirements for other professions does not require the conclusion that the Licensure Act is arbitrary or that engineers have been unfairly treated or unfairly singled out. This Court has recognized: "[T]he legislature need not 'strike at all evils at the same time or in the same way.' It is legitimate for the legislature to proceed 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' As the solution of the instant problem is a legitimate legislative objective and the classification used to achieve that objective is a reasonable one, the legislature here is not exceeding its constitutional prerogative⋯⋯"

**\*18** *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 272 (Ala.1981) (citations omitted). See also *Spann*, 270 Ala. at 400, 118 So.2d at 743 (concluding that a statutory licensing requirement and exceptions thereto applicable to architects were not unconstitutionally vague and did not improperly create a discriminatory classification; "It is within the scope of legislative authority to make classifications in its regulatory enactments⋯⋯ Mere inequality under such classification is not sufficient to invalidate a statute."). We find nothing discriminatory or arbitrary in the Licensure Act.

Moreover, all of the above arguments amount to nothing more than the unfounded assertion that if a litigant's expert of choice is not permitted to testify, then the litigant's access to the courts is unfairly restricted. However, the Licensure Act does not deny or restrict the Hunters or any other litigant's access to the courts. As noted above, proffered expert witnesses often are disallowed for a variety of reasons without infringing on a litigant's right to access the courts. Additionally, there are ample licensed engineers in the State of Alabama whose testimony the Hunters may seek to use at trial. Moreover, if the expert of choice is from outside the State certification in licensing process overly burdensome of Alabama, he or she merely needs to obtain order to offer his or her testimony. The set forth by the Licensure Board is not, and we find nothing in this process to indicate that the Licensure Act is discriminatory or arbitrary.

[20]   The Hunters also argue that the addition of the term "testimony" to the Licensing Act violates the Equal

Protection Clause of the Fourteenth Amendment of the Constitution of the United States and the right of equal protection guaranteed by the Alabama Constitution of 1901, Art. I, §§ 1, 6, and 22. The Hunters note that, other than the Licensure Act, which is applicable only to engineers, the legislature has not amended any other statute governing professional practices in Alabama to prohibit the giving of testimony by persons unlicensed in the State of Alabama in that particular profession. They point to the definition in the Alabama Code of the "practice of psychology" and to the Alabama Medical Liability Act as examples of the treatment by the legislature of other professional practices that are not subject to the same licensing requirement as are engineers. They argue that subjecting the practice of engineering to this prohibition while not subjecting other professional practices to it equates to "class legislation," thereby exceeding the authorized police powers of the legislature and offending the Equal Protection Clause of the United States and of the Alabama Constitution of 1901.

[21]    We find no merit in this argument. Because this statute involves neither a "suspect class" nor a "fundamental right" the rational-basis test is the standard applicable to the Hunters' equal-protection claim. See *Plitt v. Griggs*, 585 So.2d 1317 (Ala.1991) (discussing similar equal-protection challenge to the Alabama Medical Liability Act; court applied the rational-basis test because the Alabama Medical Liability Act involved neither a suspect class nor a fundamental right). When applying the rational-basis test, this Court must determine (1) whether the classification furthers a proper governmental purpose, and (2) whether the classification is rationally related to that purpose. *Gideon v. Alabama State Ethics Comm'n*, 379 So.2d 570, 574 (Ala.1980). If both factors are established, the classification does not violate the Equal Protection Clause.
*19 The Licensure Act identifies its purpose as safeguarding life, health, and property and promoting the public welfare. § 34-11-1(7) and § 34-11-2(b), Ala.Code 1975. This is unquestionably a proper governmental purpose. Additionally, the legislature is well within its powers to conclude that offering sworn testimony regarding engineering matters constitutes the practice of engineering. That is the prerogative of the legislature, and we can find no deficiency in this conclusion. It is not irrational to assume that if persons who testify as to engineering matters have already met the requirements for licensure as a professional engineer in this state, then those persons are likely to have a desirable level of expertise and knowledge in engineering matters. Additionally, it is not irrational to assume that those persons who are unable to meet the licensing requirements of this State are less likely to have a desirable level of education and experience regarding engineering matters. For these reasons, the legislature could have concluded that imposing a licensing requirement on those persons wishing to provide sworn testimony regarding engineering matters would further the stated goal of safeguarding life, health, and property and promoting the public welfare.
Additionally, legislation necessarily involves some degree of line-drawing. *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). In *Tyson v. Johns-Manville Sales Corp.*, supra, superseded by statute as recognized in *Johnson v. Garlock, Inc.*, 682 So.2d 25 (Ala.1996), this Court addressed an equal-protection challenge to a statute:
"[I]t is important to state that we cannot find [a legislative] Act invalid 'because [we] think there are elements therein which are violative of natural justice, ⋯ harsh or in some degree unfair ⋯ or ⋯ of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expedience are held exclusively for the legislative bodies⋯⋯ [T]he only question for the court to decide is one of power, not of expediency or wisdom.' Whether *in fact* the Act will efficaciously or wisely accomplish the purposes of the Act is not the question; the equal protection clause is satisfied by our conclusion that the legislature *could rationally have decided* that it would do so.'
" '[The legislature is] not required to convince the courts of the correctness of [its] legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker."
" '....
" '[I]t is not the function of the courts to substitute their evaluation of legislative facts for that of the legislature.'
"....
"A statutory discrimination between classes is held to be relevant to a permissible, legislative purpose if any state of facts reasonably may be conceived to justify it.
*20 "The health, safety, and the provision of a remedy for Alabama citizens who are exposed to asbestos and thereby suffer injury are legitimate and reasonable objectives of the legislature."
399 So.2d at 271-72 (citations omitted).
Additionally, as noted above, the Alabama Legislature has chosen to regulate professions other than engineering. It simply has chosen not to regulate those professions in the same manner as it did the engineering profession. However, the Equal Protection Clause does not require that the legislature treat each classification the same. See *Tyson*, 399 So.2d at 272 (quoted above); see also *Spann*, 270 Ala. at 400, 118 So.2d at 743 ("It is within the scope of legislative authority to make classifications in its regulatory enactments⋯⋯ Mere inequality under such classification is not sufficient to invalidate a statute.").
We find that the effect of Act No. 97-683-requiring a professional engineering license in order to testify under oath as to engineering matters-was rationally and reasonably related to the legislature's stated goal of regulating the

practice of engineering in order to safeguard life, health, and property and to promote the public welfare. See § 34-11-1(7), and § 34-11-2(b), Ala.Code 1975. Thus, the legislature could have concluded that imposing a licensing requirement on those persons wishing to testify as to engineering matters would further the stated purposes of the Licensure Act. Accordingly, the licensure requirement of § 34-11-1(7), Ala.Code 1975, does not violate the Equal Protection Clause of the United States Constitution or equal protection of the laws as guaranteed by the Alabama Constitution.

[22]    Next, the Hunters argue that the Licensure Act, as amended, violates the separation-of-powers doctrine set forth in Art. III, §§ 42 and 43, Const. of Ala.1901, because "it is an undue intrusion by [the] Legislature on the proper functioning of the Judicial Branch." (Hunters' brief at p. 82.) We disagree.
This Court unquestionably has the authority to adopt those rules necessary to govern the judicial process, at both the trial and appellate levels. However, where the rules adopted by this Court conflict with a subsequent legislative enactment, the legislative enactment takes precedence. See, e.g., *Ex parte Kennedy,* 656 So.2d 365 (1995) (recognizing that where the legislature adopts a general act of statewide application, the legislature may change the rules promulgated by this Court that govern the administration of all courts).

[23]    Next, the Hunters argue that the Licensure Act, as amended, violates the Interstate Commerce Clause, Art. I, § 8, cl. 3, of the United States Constitution. They argue that the Licensure Act interferes with interstate commerce by prohibiting out-of-state engineers from testifying in Alabama courts and that this prohibition has no putative local benefit to justify the interference.
However, the Licensure Act does not prohibit out-of-state engineers from testifying in Alabama or prohibit them from serving as forensic experts in this State. The Act merely requires that out-of-state engineers wishing to testify obtain local certification before doing so. The burden of registration is *de minimis* compared to the benefit obtained by the Licensure Act: the protection of life, health, and property that is obtained by regulating the practice of engineering. That is all that is required. See *Pike v. Bruce Church,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."). See also 397 U.S. at 144, 90 S.Ct. 844 (recognizing that the field of public safety is unquestionably appropriate for local regulation).
*21 We also note that several of the Hunters' "other constitutional arguments" are unsupported by authority. To the extent the Hunters provide no authority in support of their claims, we need not specifically address those claims. See *City of Birmingham v. Business Realty Inv. Co.,* 722 So.2d 747 (Ala.1998) (recognizing that an appellate court need not consider an issue unsupported by authority); and Rule 28(a)(10), Ala. R.App. P.
For the above stated reasons, we find no merit in the "other constitutional arguments" asserted by the Hunters. We therefore find no basis on which to declare Act No. 97-683 or § 34-1-11, Alabama Code 1975, unconstitutional.

*Conclusion*

Act No. 97-683 did not violate Art. IV, § 45, Const. of Alabama of 1901. Additionally, § 34-11-1, Ala.Code 1975 (as amended), is not unconstitutionally vague. We find no merit in the other constitutional arguments asserted by the Hunters. We reverse the judgment of the trial court and remand this case for further proceedings. The injunction issued by the trial court is hereby dissolved.
REVERSED AND REMANDED; INJUNCTION DISSOLVED.

NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, SMITH, and BOLIN, JJ., concur.

PARKER, J., concurs in the result.

FN1. In addition to establishing that Hicks was certified by the Licensure Board as an "engineer intern," the Hunters established the following: In 1985, Hicks graduated from the University of Alabama in Birmingham, earning a bachelor's degree in civil engineering. Hicks has been employed in various engineering-related capacities since graduating from college. Since 2002, Hicks has been employed as the manager of water resources for the Water Works and Sewer Board of the City of Birmingham. His duties in that position include, among others, supervising and reviewing the operations of the plants, tank sites, substations, reservoirs, and other related sites; maintaining the "Raw Waters SCADA System" and associated controls; directing and assisting supervisors of pumping stations; training the supervisory personnel to perform their duties to schedule and conduct appropriate tests of mechanical and electrical equipment to ensure the efficient operation of raw facilities; and advising and consulting with the assistant general manager on the operation, maintenance, and status of all raw-water facilities.

From 1995 to 2002, Hicks was employed as a superintendent of pumping stations with that same water and sewer board. The Water Board did not dispute Hicks's qualifications, other than his lack of a professional engineer's license.

FN2. In accordance with § 6-6-227, Ala.Code 1975, Hunter notified the Attorney General of the State of Alabama of this claim of unconstitutionality. The attorney general filed an acceptance and waiver of further service. The attorney general's office was properly notified of all subsequent claims of unconstitutionality raised by Hunter.

FN3. The Alabama Trial Lawyer's Association filed a brief with the trial court as amicus curiae in support of the Hunters.

FN4. Regulation 330-X-2-.01(2), Ala. Admin. Code, provides:

"(2) The terms 'consultation,' 'investigation,' 'evaluation,' and 'planning' as used in the definition of the practice of engineering set forth in Section 34-11-1(7), Code of Ala.1975 , shall include, but are not limited to, services provided by testing laboratories involving the selection of proper tests to be performed (consultation and planning) when done for the purpose of developing design criteria or for the purpose of determining cause of failures (investigation) and analyses to provide recommendations for the foundation and materials to be used in the design or judgment which relate to the acceptability of structural or foundation construction (evaluation). Testing and inspection do not constitute the practice of engineering (1) when they are performed in accordance with previously written standards or specifications or satisfy the standards setting forth the methods and techniques to be followed by the testing agency and no judgment is required other than a comparison of the materials in place with the previously specified standards or (2) when testing or inspection data are collected in conformance with a specific standard.

"Any attempt to determine the structural integrity or capacity of a building, or any sub-system thereof, other than detection of problems by visual inspection or normal operation of the user's controls, constitutes the practice of engineering."

Regulation 330-X-2-.01(19), Ala. Admin. Code, provides:

"(19) The term 'testimony' as used in Sections 34-11-1(7) and 34-11-1(8), Code of Ala.1975 , shall mean a declaration made by a witness under oath or affirmation related to engineering and surveying activities in the State of Alabama."

FN5. In fact, in Baerwald, the court indicated that when a statute and a rule of evidence conflicted, the rule of evidence prevailed. 122 N.M. at 682, 930 P.2d at 819. The New Mexico Constitution vests the power to adopt procedural and evidentiary rules exclusively in the New Mexico Supreme Court; statutes purporting to regulate the practice and procedure of the courts in that state are not binding. See Ammerman v. Hubbard Broad., Inc., 89 N.M. 307, 551 P.2d 1354 (1976). This is contrary to Alabama law. See, e.g., Ex parte Children's Hosp. of Alabama, 721 So.2d 184 (Ala.1998) (recognizing that where a subsequently enacted statute and a rule conflict, the subsequently enacted statute must be given precedence over the rule).

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works Ala.,2006.
Board of Water and Sewer Com'rs of City of Mobile v. Hunter
--- So.2d ----, 2006 WL 2089914 (Ala.)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.