IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW RILEY | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )  Civil Action No.: 1:05cv994-MHT |
| | ) |
| UNITED RENTALS (NORTH | ) |
| AMERICA), INC., et al. | ) |
| | ) |
|       **Defendants.** | ) |

## DEFENDANT UNITED RENTALS' MOTION TO EXCLUDE

COMES NOW the Defendant, United Rentals (North America), Inc., and moves to exclude proposed expert opinion testimony of Donald R. Shaver, John C. Frost, and Roger Davis. See FED. R. EVID. 104, 402, 403 and/or 702. As grounds therefor, Defendant United Rentals asserts that the testimony of Donald R. Shaver, John C. Frost, and Roger Davis is improper, unreliable, and irrelevant under both Federal Rules of Evidence, Rule 702 and the guidelines established by Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

I.     The Law

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, still, experience, training or education may present opinion testimony provided the witness' specialized knowledge will assist the trier of fact. The critical concern of these rules governing expert testimony is insuring evidentiary reliability and relevance. See, e.g. Browder v. General Motors Corp, 5 F.Supp.2d 1267, 1282 (M.D. Ala. 1998). Rule 702 imposes a special obligation upon the trial judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable." Kumho Tire, 119 S.Ct. at 1174. (Citing Daubert).

A.     Witness Must Qualify As An Expert.

Fed. R. Evid. Rule 702 states:

> "[1]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact and issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

For a witness' opinion and testimony to be admissible under Rule 702 of the Federal Rules of Evidence: " ... a witness must have such knowledge, skill, experience, or education that his or her opinion will aid the trier of fact in understanding the evidence." Browder, 5 F. Supp.2d at 1281. The burden of laying a proper foundation for the admission of expert testimony is on the party offering such testimony, and the admissibility of the expert's testimony must be established by preponderance of the evidence. Daubert, 509 U.S. 579, 592 n.l0 (1993). Once an expert is qualified, the Court is to consider whether the opinion proffered by the expert is within the witness' field of expertise. If not, the opinion is to be excluded. See. e.g., Montgomery v. Noga, 168 F.2d. 1282 (11th Cir. 1999) (excluding an expert's opinion because the issues to which the expert testified were distinct from his area of expertise).

B.  The Witness' Testimony Must Be Reliable And Relevant.

In order for expert testimony to be admissible, the expert's opinion must also have been shown to be both reliable and relevant. See Daubert, 509 U.S. at 593-94. (Setting forth the criteria to be considered in determining the relevance and reliability of scientific expert testimony); Kumho Tire, 19 S.Ct. 1167 (1999) (Applying the criteria as set forth in Daubert to all expert testimony proffered under Federal Rule 702).

1.  The Reliability Standard.

To be considered reliable, it must be established that an expert's opinion is based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation. Without such an underlying basis of support, an opinion is merely one of many

possible theories and interpretations of the facts at issue and is no more or less helpful than the trier of fact's own reading of the evidence, as was discussed in detail in Browder:

> While an expert may base an opinion on facts or data reasonably relied upon by experts in the field, and this data need not be admissible into evidence, Fed.R.Evid. 703 '[t]heoretical speculations, unsupported assumptions, and conclusory allegations advanced by an expert". are [not] entitled to any weight when they are raised in opposition to a motion for summary judgment' It is well established that a party may not avoid summary judgment on the basis of expel1's opinion which fails to provide specific facts from the record to support its conc1usory allegations' 'Conc1usory allegations without specific supporting facts are of no probative value.'

Id. at 1283. (Internal citations omitted).

In Daubert, the Supreme Court set forth a five-factor, non-dispositive, non-exclusive test to be employed by the trial court under Rule 702 in determining the "reliability" of the scientific evidence. Those factors are: (1) whether the technique or theory has been tested; (2) whether the theory or technique has been subjected to be reviewed and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) the degree to which the theory or technique has been generally accepted in the scientific community. 509 U.S. at 593-94.

Subsequently in Kumho Tire, the Supreme Court held that the Daubert's "gate keeping" obligation applies not only to "scientific" experts, but to all expert testimony. Specifically, the Kumho Court held that Rule 702: Makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized knowledge'. It makes clear that any such knowledge might become the subject of expert testimony.

> In Daubert the court specified that it is the rule's word 'knowledge' not the words (like 'scientific') that modify that word that establishes standard of evidentiary reliability. 509 U.S. at 589-590. Hence, as a matter of language, the rule applies its reliability standard to all 'scientific', 'technical' or 'other specialized' matters within its scope. We concede that the court in Daubert referred only to 'scientific' knowledge. But as the court there said, it referred to 'scientific'

3

testimony 'because it was the nature of the expertise, at issue'. 526 U.S. at 148.

The Kumho court found that any or all of Daubert factors may be permissibly used to determine the reliability of proffered expert testimony, but stated that the factors upon which a trial judge relies to determine the reliability of expert testimony must depend upon the particular area of expertise that is being evaluated. Kumho, 526 U.S. at 149-150. The Court noted the Daubert requirements were designed to make certain that an expert, whether basing its testimony upon professional studies or professional experience would employ in the courtroom the same level of intellectual rigor that categorizes the practice of an expert in the relevant field. Id. at 149.

2. The "Relevance" Standard

To be considered "relevant" under the tests set forth in Daubert, an expert's opinion must be shown to logically advance the material aspect of the proposing party's case. Allison v. McGhan Medical Corp., 184 F.2d. 1300, 1312, (11th Cir. 1999). "Rule 702's 'helpfulness' standard requires a scientific connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S at 591. Basing an expert opinion on facts and not on evidence is not helpful to the trier of fact in understanding the evidence or determining the facts in issue. Browder, 5 F.Supp. 2d at 1283.

Further:

> [a]n expert's opinion must be based on "facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation" (citations omitted) that an underlying basis of support, the "expert's" opinion is only one of many theories and interpretation of the facts at issue, and is no more or less helpful than the trier of facts own readings of the evidence.

Id.

C. Analysis

The Plaintiff seeks to offer expert testimony of Expert testimony of Donald R. Shaver,

4

John C. Frost, and Roger Davis to establish that aluminum oxide had formed on the subject core drill machine due to negligence of the defendant. However, expert testimony by Shaver, Frost, and Davis clearly fails to pass the tests enunciated in these interpretations of the rules of evidence. The facts upon which these experts base their opinions are unreliable and therefore improper and irrelevant. Neither Roger Davis or John C. Frost actually examined the core drill machine. (Davis, p. 27, ll. 1-7). Frost only examined the inspection video and assorted pictures. (Frost, p.239, ll. 19-21). Neither Davis nor Frost attended any inspection of the core drill machine and never have seen the aluminum oxide, other than pictures. (Davis p. 31, l. 12 - p. 32, l. 4, and Frost, p. 239, ll. 19-21). There was no measurement of the quantity of aluminum oxide present, so all either Davis or Frost had to examine was photographic evidence. (Davis p. 31, l. 12 - p. 32, l. 4). Furthermore, Roger Davis admitted that he has never even seen the inside of a Gast vacuum pump. (Davis p. 22, ll. 13-15). Finally, neither witness can say with any certainty when this aluminum oxide first appeared or how long it had accumulated. (Davis p. 40, l. 1-11 and Frost p. 246, l. 23 - 247, l. 1).

    Davis and Frost hypothesized that due to the amount of aluminum oxide present in the vacuum pump, the pump was clogged and did not create enough suction to hold the pump base to the floor; and that this caused the base of the drill to break loose once the bit bound in the hole. When the base broke loose from the floor, it spun and struck Matthew Riley in the face, causing injury.

    Both experts claim the presence of aluminum oxide in the vacuum pump is due to an alleged failure of United Rentals to maintain/clean the equipment. However, the foundation on which they base their opinion is photographic evidence examined 3 years after the accident. This basis is so unreliable that it is not possible for them to reach a reasonably accurate conclusion and is based solely on conjecture or speculation. The Plaintiff's expert was responsible for storing

5

the drill post-accident and the drill was only four months old at the time of the accident. The potential rate of error in this case is unknown. Both parties agree that there is no way to measure the amount of aluminum oxide present at the time of the accident. Neither party can say with any certainty when this aluminum oxide first appeared or how long it took for it to accumulate. As such, this evidence is so speculative that their opinion cannot advance the material aspect of the plaintiff's case. As such, Roger Davis and John C. Frost's testimony is not only improper, it unreliable and irrelevant.

Donald Shaver's testimony is merely cumulative and is not different than Frost or Davis. As such, his testimony would unduly prolong the trial. Hepring v. Continental Oil Co., 28 F.2d 406, 410 (5th Cir. 1980)(excluding evidence that unduly prolonged the trial). Donald Shaver will opine that United Rentals failed to properly maintain the core drill. As grounds for his opinion, Shaver claims one of the rented bits had a missing tooth and was generally in poor condition. (Shaver, p. 265, l. 15 - p. 266, l. 2). Also, Shaver bases his opinion on the fact that the vacuum pump was not working at the May 12, 2005 inspection, over a year and a half after the incident in question. (Shaver, p. 277, ll. 15-23).

It must be established that an expert's opinion is based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation. However the facts upon which Shaver grounds his opinion are flawed. Shaver does not know if the drill bit with missing tooth was being used at the time of the accident. (Shaver, p. 277, ll. 10-13). In comparison, Mike Walters, Matthew Riley's supervisor, testified that they were not using, nor would use, a damaged bit. (Walter, p. 60, l. 4 - p. 61, l. 13; also p. 60, ll. 4-17).

Furthermore, there is no way to measure the amount of aluminum oxide present at the time of the accident. (Davis, p. 40, ll. 1-11 and Frost, p. 246, ll. 4-23). The aluminum oxide found clogging the vacuum pump at the May 12, 2005 inspection was discovered more than one

6

year and eight months post-accident.  Shaver testified that it might only take two to three months of moisture exposure for the aluminum oxide to "set up." (Shaver, p. 293, l. 15 - p. 294, l. 3). Neither Shaver nor any other witness for the plaintiff performed any testing to determine how much water was ingested by the vacuum pump either before or after the accident. (Shaver, p. 290, l. 2 - p. 291, l. 2).  His opinion is based only upon his subjective conclusion that the vacuum pump could not ingest enough water or slurry from drilling one hole to cause enough oxidation to clog the machine. (Shaver, p. 288, l. 21 - p. 289, l. 3).  Shaver never even measured the volume or weight of the corrosion. (Shaver, p. 288, l. 21 - 289, l. 3). As such, there is no way to quantify the amount of water ingested by the vacuum pump or to determine if enough corrosive material was present to clog the pump.  Therefore, Shaver's testimony is improper, unreliable and irrelevant.

WHERFORE, the foregoing premises considered, the defendant respectfully requests this Honorable Court to exclude the expert testimony of Donald R. Shaver, John C. Frost, and Roger Davis.

/s/ C. Winston Sheehan, Jr.
C. WINSTON SHEEHAN, JR.   (SHE013)
Attorney for United Rentals (North America), Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
Phone:  (334) 387-7680
Fax:     (334) 387-3222

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 22, 2006, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following registered persons who were also served by U.S. mail and telefax:

Joseph T. Brasher
Heather Robinson
Hamilton Westby Antonowich
 & Anderson LL
600 W Peachtree Street, NW
Suite 2400
Atlanta, GA 30308
(404) 872-1822

Farrest Taylor
Joseph David Lane
Cochran Cherry Givens & Smith, PC
PO Box 927
Dothan, AL 36302-0927
(334) 793-8290

Robert H. Sprain, Jr.
Kevin Shires
Sprain & Associates PC
1707 29th Court, South
Birmingham, AL 35209
(205) 802-7093

               /s/ C. Winston Sheehan, Jr.
               OF COUNSEL