# ATTACHMENT 4

Page 1

IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF ALABAMA

SOUTHERN DIVISION


MATTHEW RILEY,

      Plaintiff,

Vs.                              CIVIL ACTION NO.

                                   1:05 CV-994-T

UNITED RENTALS (NORTH AMERICA),

INC., et al.,

      Defendants.


      DEPOSITION OF CHARLES ROBY HICKS, JR,

M.D., taken pursuant to notice and stipulation on

behalf of the Defendants, in the offices of Dothan

Specialty Clinic, 1118 Ross Clark Circle, Suite 501,

Dothan, Alabama, before Ricky L. Tyler, Certified

Court Reporter and Notary Public in and for the State

of Alabama at Large, on Tuesday, December 12th, 2006,

commencing at 10:05 A.M.

**Roby Hicks Deposition Excerpts:**

7
3  Could you please state your name on the
4  record?
5  A.  Charles Roby, that's R-O-B-Y, Hicks, H-I-C-K-S,
6     Junior. I am a Doctor of Medicine,
7     Board-certified in psychiatry in private
8     practice here in Dothan.

7
15 Q.  Okay. And did you have an occasion to treat
16    Mr. Riley in the course of your practice as a
17    doctor?
18         MR. LANE: And just so the record is
19            clear, we object to the testimony
20            -- and this will be my only
21            objection. We object to the
22            testimony on the basis of the
23            psychotherapist, psychiatrist/

8
1             patient privilege. Did I say that
2             right, Doctor Hicks? Is that the
3             right privilege?
4  A.  My understanding is that there is a privilege
5     between a patient and psychiatry. And my
6     understanding is that it's based on a law that
7     states that it's the same as with an attorney.
8          MR. LANE: And just for the record we
9             are raising that objection during
10            the course of your deposition and
11            we're not waiving that by allowing
12            this testimony to go forward.
13         MR. SHIRES: That's fine.

23  Q.  Okay. For the benefit of those individuals

9

1       that may ultimately hear your testimony, could
2       you please give me your educational background?
3   A.  I received a college degree from Vanderbilt
4       University, four years of medical school
5       University of Mississippi, three years
6       psychiatric residency University of
7       Mississippi, two years U.S. Army as a
8       psychiatrist, and subsequently Board-certified
9       in psychiatry and neurology. Seven years
10      teaching in the Medical School Department of
11      Psychiatry at the University of South Alabama.
12      And since 1983 I've been in private practice
13      here in Dothan, Alabama.

10

2   Q.  Okay. Did you have an occasion to, at one
3       time, treat a patient named Matthew Riley?
4   A.  Yes, sir.
5   Q.  Okay. If you would, explain for me the
6       circumstances under which Mr. Riley was -- came
7       under your care?
8   A.  I need to explain that my only source of
9       information are the records that I have from
10      October of 2003. And referring to the
11      admission history of Mr. Riley at that point,
12      27 years old, injured on the job -- and I'm
13      reading from the history that I recorded then.
14      Injured on the job on the 28th of August 2003
15      with some rather severe head and facial
16      injuries and is on medical leave expecting one
17      or more surgical correction of his eye. At the
18      accident, a drug screen was positive for
19      marijuana. He was also required to complete a
20      rehab program before he can return to work.
21      Denies any difficulty with sleep, anxiety or
22      depression. Now admitted to the partial
23      hospitalization program at AltaCare.

14
22  Q.  Okay. In your admission history does it
23      indicate the circumstances under which

15
1       Mr. Riley was brought into the program?
2   A.  Only as I indicated when I read from the
3       paragraph the history of present illness.
4   Q.  Okay. Which is that he had an injury with a
5       positive drug screen subsequent to that injury?
6   A.  Yes, sir.
7   Q.  Okay. And this history, this is information
8       that's provided to you by the patient, correct?
9   A.  Yes, sir.
10  Q.  Okay. So the history of present illness,
11      medical history, that's all information that
12      you gather from the patient?
13  A.  Whether or not it is available when he was
14      interviewed or whether or not we talked to him
15      on the phone or anything else, I will go back
16      and ask and go over that information directly
17      with the patient.

17
11  Q.  Okay. And so that just once again, I guess,
12      confirms that the reason he came to you was a
13      positive drug screen at his work?
14  A.  For marijuana, yes.

31
23  Q.  Could you read those in paragraph nine?

32
1   A.  It would be easier to read the ones that are
2       typed, but it says "Axis I," one is "marijuana

```
3      abuse."
4   Q. And what did you mean by that, sir?
5   A. We have documentation that he has used
6      marijuana. I have no documentation that there
7      was any medicinal justification, therefore the
8      conclusion would be that this was an abuse of
9      that substance.
```

43

```
17  Q. All right, sir. And if you could, could you
18     read what's typed on that report that you
19     signed there, sir?
20  A. Yes, sir. "27-year-old single white male,
21     failed a drug screen at work on August 29th,
22     '03. He was injured in an accident and the
23     urine drug screen was done as part of that
```

44

```
1      procedure. His screen showed positive for
2      marijuana. Matt reports that he had been using
3      marijuana periodically to help him sleep. He
4      had recently changed shifts and was having
5      difficulty initiating sleep. Denies any other
6      drugs. Moderate alcohol intake. Has been
7      prescribed Percoset and Darvocet for the pain
8      resulting from his injuries. Matt has had two
9      facial surgeries in the past two weeks due to
10     the accidental injury. He denies misusing the
11     pain medication. Denies depression or anxiety
12     symptoms. Appears compliant and motivated for
13     treatment. Stated he has not used marijuana
14     since the accident on August 29th."
15  Q. Is that --
16  A. Okay. Then that would be last used marijuana
17     at accident August 29th '06 -- '03, that would
18     make sense.
```

45

11  Q.  I need to look at the same records that you've
12      been looking at, and because of the difficulty
13      here, do you mind if I come around? How many
14      times did you personally see Matthew Riley?
15  A.  I saw him on admission.
16  Q.  On admission. That's the extent of your
17      personal contact with Matthew Riley?
18  A.  That's what the record would document.
19  Q.  Okay. And you did not see him at the time that
20      you did your discharge summary?
21  A.  No, sir.
22  Q.  Okay. Let's see. The discharge summary that
23      was done on October 20 -- what was it, the

46

1       23rd?
2  A.   Uh-huh. (Positive response.)
3  Q.   Is that right?
4  A.   Yes, sir.

46

22  Q.  And you provided some testimony about it. What
23      documentation did you rely on to conclude that

47

1       Matthew Riley -- well, let's go back. You
2       indicated that you had evidence of marijuana
3       use. Was that the positive drug screen?
4  A.   I don't have that information here.
5  Q.   I mean, what was the evidence of the marijuana
6       use that you're referring to?
7  A.   I don't have that information here.
8  Q.   You don't have that here. You've indicated
9       here today that you're relying upon what's in
10      your records, you don't have any recollection
11      personally about what Matthew Riley told you or
12      what anyone else told you, correct?
13  A.  I have no recollection of this gentleman.
14  Q.  So anything that you testified here today would
15      be actually what's in the notes? The source of
16      your testimony is from the notes?
17  A.  I can only testify as to what is reflected

18   here.
19 Q. Okay. So are you aware of any evidence in the
20   records which indicates to you that Matthew
21   Riley was continuing to use marijuana during
22   the couple of weeks that he was scheduled to be
23   in the program?

48

1 A. I have only the records before me to refer to.
2 Q. Right. Is there anything in the records that
3   you've seen which would indicate that he was
4   continuing to use marijuana --
5 A. No, sir.

48

14 Q. Here it is right here. And you were -- you had
15   difficulty reading where you were reading about
16   the 8/29?
17 A. Yes, sir.
18 Q. Okay. Do you have any personal recollection
19   about what Matthew Riley told you --
20 A. No, sir.
21 Q. -- on this occasion? This was October 6th,
22   correct?
23 A. That would have been October the 6th.

49

1 Q. Okay.
2 A. '03.
3 Q. Do you have any personal recollection about
4   what he told you --
5 A. No, sir.
6 Q. -- other than what's reflected in your
7   handwritten notes?
8 A. No, sir.

49

9 Q. Does the fact that -- did you -- do you have

10  any information to indicate that Matthew Riley
11  was smoking marijuana on the job? Do you have
12  anything in your notes which would indicate to
13  you that Matthew Riley was smoking marijuana on
14  the job at any time?
15  A. No, sir.
16  Q. Okay. You don't recall him telling you that?
17  A. I have now answered I think five times that I
18  don't recall.
19  Q. And that would be something -- if he told you
20  that, that would be something you would reflect
21  in your notes, correct?
22     MR. SHIRES: Object to the form.
23  A. I would hope I would reflect that in my notes.

50

1  Q. Okay. Do you have anything in your notes which
2  tells you the time in which Matthew Riley
3  actually smoked marijuana on August the 28th,
4  August 29th or any date?
5  A. No, sir.
6  Q. Okay. Do you have any information in your
7  records which indicates at any time that
8  Matthew Riley was impaired in his job, impaired
9  as a result of intoxication on marijuana?
10 A. No, sir.
11 Q. You don't have anything in your records to
12    indicate that?
13 A. No, sir.

50
14 Q. Okay. Does the fact that there was a positive
15    drug screen indicate that the individual that
16    tested positive was impaired to any certain
17    degree as a result of marijuana?
18 A. No, sir.

19 Q. Okay. Just one second. Now, on your discharge
20     diagnosis here, which I believe is -- this has
21     been transcribed from your notes; is that
22     correct?
23 A. It was dictated, yes, sir.

### 51

1 Q. You had indicated on Axis IV "occupational
2     problems due to substance abuse;" do you have
3     anything in your records which indicates what
4     problems Matthew Riley was having at work?
5 A. The problem that he was having at work was he
6     could not go back to work until he completed a
7     rehab program.
8 Q. Right. Exactly.
9 A. I have no knowledge of anything other than
10    that.
11 Q. Anything other than that. That was the
12    problem, he couldn't go back to work until he
13    completed the program, correct?
14 A. Yes, sir.

### 52

4 Q. Okay. Do you know what days Matthew Riley
5     actually missed from the program?
6 A. No, sir.
7 Q. Do you know why he missed any days?
8 A. No, sir.
9 Q. You do not. Do you know whether or not there
10    was any illness that he was suffering from that
11    caused him to miss some days?
12 A. No, sir.

### 52

18 Q. Okay. Just one second, Doctor. Does one
19    positive drug screen indicate or prove that an
20    individual is dependent on a substance?
21 A. Oh, I'm sorry, you asked if it proves?

22 Q. Yes.
23 A. Oh, no drug screen I'm aware of proves that a

53

1    person is -- no, I'm sorry. No drug screen
2    that I'm aware of proves dependence.

54

17 Q. And as I understand it, you diagnosed Mr. Riley
18    with marijuana abuse?
19 A. Yes, sir.
20 Q. What was the basis for your diagnosis of
21    Mr. Riley having marijuana abuse?
22 A. This is the second time that question has been
23    asked of me. My previous answer is the same,

55

1    that marijuana is not a substance that has
2    medicinal usage in any context that Mr. Riley
3    made available to me. It is an illegal
4    substance, therefore if a person is using
5    marijuana, it would be termed abuse.

56

23 Q. Do you have any basis for concluding one way or

57

1    the other on the basis of a positive drug
2    screen that an individual is intoxicated -- a
3    positive drug screen for marijuana, that they
4    are intoxicated to any degree that would affect
5    their ability to operate a piece of equipment?
6 A. This is a hypothetical question, sir?
7 Q. Yes. Just on the basis of a positive drug
8    screen do you have any basis or even the
9    qualifications to make such a determination?
10 A. Well, first, making a diagnosis or making a
11    judgment based upon just a lab test is not good

```
12      medical practice. I would have to take into
13      account what the person's behavior was. So if
14      there was a patient who was operating a piece
15      of machinery in a dangerous, bizarre or
16      unexpected manner and there was a drug screen
17      that both qualitatively reflected THC and
18      quantitatively reflected a large concentration,
19      it would be reasonable to consider seriously
20      that that might play a role in the difficulty.
21   Q. And if there is no quantification determination
22      made and no outward signs of impairment, could
23      you make a conclusion as to whether or not just
```

                               58
```
1       a positive screening test is proof that the
2       individual was impaired in any way from the
3       marijuana?
4    A. No, sir.
5    Q. Could not tell that, could you?
6    A. No, sir.
```