IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MATTHEW RILEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number: 1:05-cv-994-W |
| | ) | |
| UNITED RENTALS, INC.; and | ) | |
| SAINT-GOBAIN ABRASIVES, INC., | ) | |
| formerly d/b/a Clipper Manufacturing | ) | |
| Company, Inc., and d/b/a Norton | ) | |
| Construction Products | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SAINT-GOBAIN ABRASIVES, INC.'S, BRIEF IN
OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**

COMES NOW the Defendant, Saint-Gobain Abrasives, Inc., formerly d/b/a Clipper Manufacturing Company, Inc., and d/b/a Norton Construction Products (hereinafter "Saint-Gobain"), by and through its undersigned counsel, and files this brief in opposition to the Plaintiff's Motion in Limine in the above-styled cause of action. For those numbered items in the Plaintiff's Motion that have no response contained herein, the Court may assume that the Defendant has no objection to the Plaintiff's Motion as to those items, and that the Defendant does not intend to introduce evidence or testimony on such matters. As grounds for opposition to the specific items contained in the Plaintiff's Motion in Limine, the Defendant would show unto the Court as follows:

1. **PAYMENT OF MEDICAL BILLS BY COLLATERAL SOURCES**

The Plaintiff asks this Court to preclude the Defendants from presenting any evidence regarding the "health, disability or other insurance payments, including worker's compensation

1

payments compensating Plaintiff for any medical bills or other damages". Plaintiff asserts that such evidence is in violation of the collateral source rule, and cites Davis v. Odeco, Inc., 18 F.3d 1237, 1243-44 (5th Cir. 1994), as authority for this assertion.

On June 11, 1987, the Alabama legislature enacted Alabama Code § 12-21-45, which provides, in pertinent part, as follows:

> (a) In all civil actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence. In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses.

Ala. Code § 12-21-45.

This case is before this Court based on diversity of jurisdiction. Accordingly, for substantive matters Alabama law is applicable. In Bradford v. Bruno's, Inc., 41 F.3d 625 (11th Cir.1995), the Eleventh Circuit held that the application of Alabama's collateral source rule is a substantive rule of law, and therefore applicable in federal court cases where jurisdiction is based on diversity of citizenship.

In American Post Number 57 v. Leahey, 681 So. 2d 1337 (Ala. 1996), the Alabama Supreme Court struck down Alabama Code § 12-21-45 as unconstitutional on the grounds that it violated Alabama's equal protection clause and the right to a fair jury trial. However, in Marsh v. Green, 782 So. 2d 223 (Ala. 2000), the Alabama Supreme Court, considering a similar challenge to Ala. Code § 6-5-545, which is the "sister" statute of 12-21-45 and applicable to medical malpractice actions, overruled the holding in Leahey and held that both 6-5-545 and 12-21-45 were constitutional. Marsh, 782 So. 2d at 233. Specifically, the Court held as follows:

> We reject Marsh's invitation to substitute our judgment for the policy-making decision the Legislature made in enacting § 6-5-545. We conclude that § 6-5-545 has not been shown to violate the constitution, and we overrule *American Legion Post No. 57 v. Leahey* to the extent that case held § 12-21-45, Ala. Code 1975, unconstitutional.

Marsh, 782 So. 2d at 233.

Accordingly, the Defendant respectfully asserts that the Plaintiff's Motion in Limine on this issue is not well founded. It is clear under Alabama law that the Defendant is entitled to present evidence that the medical expenses and other health care expenses claimed by the Plaintiff have been paid, in part, by a third party. The burden on the Plaintiff is to present evidence that he is required to reimburse these costs and the cost of obtaining these benefits. Therefore, the Defendant respectfully requests this Court to deny the Plaintiff's Motion in Limine on this particular issue.

2. **EVIDENCE OF, OR REFERENCE TO, OR RELIANCE ON ANY RECORDS OR CONTENT OF RECORDS ARISING OUT OF MATTHEW RILEY'S TREATMENT AT ALTACARE AND TREATMENT PROVIDED BY DR. ROBY HICKS, OR ALTACARE STAFF, OR TESTIMONY FROM C. ANDREW ROBINSON.**

3. **EVIDENCE OF, OR REFERENCE TO, THE RESULTS OF ANY DRUG SCREENS REFLECTING THE PRESENCE OF MARIJUANA OR ITS METABOLITES PERTAINING TO MATTHEW RILEY AT ANY TIME, WHETHER BEFORE OR AFTER MATTHEW RILEY'S INJURIES**

4. **EVIDENCE OF, OR OPINION TESTIMONY FROM C. ANDREW ROBINSON, DEFENDANTS' PROPOSED EXPERT WITNESS CONCERNING THE RESULTS OF DRUG SCREENS OR THE EFFECTS OF MARIJUANA IN PURPORTEDLY CAUSING MATTHEW RILEY'S INJURIES**

Because of the commonality of these three issues and that the admissibility of such evidence and testimony is inextricably intertwined, the Defendant will respond to them collectively. On August 29, 2003, Mr. Riley was injured in a work related incident. Following the incident Mr. Riley was given a urinary drug screen that was positive for marijuana. As a

result, Plaintiff was required by his employer to undergo drug counseling before he could return to work.

Mr. Riley admitted in his initial interrogatories and deposition that he smoked marijuana two days before the accident occurred. Plaintiff admitted that he smoked marijuana two days before the accident occurred. Plaintiff admitted he had been using marijuana periodically to help him sleep. However, evidence exists in Riley's patient records with Altacare that he used marijuana on the day of the accident. The Altacare records, the deposition testimony of Dr. Hicks and the deposition testimony of Deborah Kirkland shows that the Plaintiff had used marijuana on the date of the accident. (See Altacare records attached hereto as Exhibit '1').

Defendant wishes to introduce the intake records of Altacare as a business record exception to hearsay. United Rentals offers this evidence to attack Plaintiff's credibility. Furthermore, Saint-Gobain seeks admission of the above-referenced evidence against the Plaintiff Intervenor, Ralcorp. Plaintiff Intervenor Ralcorp seeks to recover an outlay of worker's compensation benefits it provided to Matthew Riley. Saint-Gobain seeks to prove that Ralcorp had a valid intoxication defense to Riley's worker's compensation claim.

### A.   WAIVER OF PRIVILEGE

The Alabama legislature has adopted a psychotherapist-patient privilege without specifically enumerated exceptions. Admittedly, this privilege would apply to the Altacare records. This code section, Ala. Code § 34-26-2, states as follows:

> "[T]he confidential relations and communications between licensed psychologists and licensed psychiatrists and client are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communications be disclosed".

Ala. Code § 34-26-2 (1975).

However, like other privileges, this particular privilege can be waived. When Riley's attorney allowed the patient records to be attached as an exhibit to the deposition transcript of Andrew Robinson, Ph.D, Riley impliedly waived the protection of the psychotherapist-patient privilege relating to the Altacare records. See Ex parte United Service Stations, Inc., 628 So. 2d 501 (Ala. 1993) ("When Nham's attorney attached Kirkland Clinic's initial records as a deposition exhibit to Dr. McDanal's deposition, that act waived the privilege to any information contained in those records"). As such, these records memorializing the Plaintiff's marijuana use should be allowed into evidence over both a hearsay and privilege objection. Furthermore, they are relevant and material when attacking the credibility of the Plaintiff's assertion that he was not intoxicated while using the subject core drill on the date in question.

### B.   PROBATIVE VALUE V. PREJUDICIAL EFFECT

An underlying premise to all evidentiary analysis is that evidence, when material and relevant, may be excluded on other grounds. One such example lies in this Court's discretionary power to exclude such evidence because its probative value is substantially outweighed by its undue or unfair prejudice. Fed. R. Evid. 403; U.S. v. Schlie, 122 F.3d 944 (11th Cir. 1997). However, no rule allows this Court the power to exclude relevant and material evidence simply because it is prejudicial. In fact, all relevant evidence should be prejudicial against the party whom it is offered. The exclusionary power of this Court exists only when the prejudice substantially outweighs its probative value. Alabama Code § 25-5-11(c)(3) states, in pertinent part, as follows:

> "[n]o compensation shall be allowed for injury or death caused by. . . the injured employee being intoxicated from the use of alcohol or being impaired by illegal drugs. A positive drug test conducted and evaluated pursuant to standards adopted for drug testing by the U.S. Department of Transportation in 49 C.F.R.,

  Part 40, shall be a conclusive presumption of impairment resulting from the use of illegal drugs."

Ala. Code § 25-5-11(c)(3).

  This section provides employers with an affirmative defense to liability for compensation benefits. The above-referenced statute creates a rebuttable presumption that the Plaintiff was impaired at the time of his injury or death. The presence of drugs in the Plaintiff's body would result in prejudice against the Defendant. As such, its admissibility should be determined by a consideration of its relevancy and by weighing the probative value of the evidence against is prejudicial impact. The potential exclusion of a statutorily created defense which is available to Saint-Gobain under this particular set of facts should be more than enough to tip the scales in favor of the probative value of the evidence and its admissibility.

  In Langford v. Redwing Carriers, Inc., 344 So. 2d 515 (Ala. Civ. App. 1977), the court stated that in order for an employer to avail itself of the statutory intoxication defense, it must appear that the injury or death suffered by the employee was proximately caused by the employee's intoxication. Langford dealt with an employee's alcohol intoxication. After reviewing the statutory intent, statutes, and case law, the Court of Civil Appeals held that the "legislature intended a successful defense on where it appeared that the accident producing the injury or death was proximately caused by the employee's intoxication.". Langford, 344 So. 2d at 520.

  Alabama appellate courts have also addressed the intoxication issue with respect to drug intoxication and drug testing. As the law reads, a positive drug test creates a presumption of impairment. In Ross v. Ellard Construction Company, Inc., 686 So. 2d 1190 (Ala. Civ. App. 1996), the court held that the burden on the employer is to prove: (1) that the employee was

intoxicated and that (2) the intoxication proximately caused the injury. Ala. Code § 25-5-51 simply removes the first prong of the test for the employer. Thus, the positive test is in and of itself proof that the employee was intoxicated. Therefore, the only burden remaining on Saint-Gobain is to prove that Mr. Riley's intoxication proximately caused the injury. In the instant case, it is clear that Mr. Riley was operating a piece of equipment that required skill, co-ordination and concentration, faculties that were all impaired as a consequence of his voluntary intoxication.

Without being able to introduce evidence of the failed drug screen, Saint-Gobain is prohibited from proving Matthew Riley's employer voluntarily paid the Plaintiff worker's compensation benefits. Not only is evidence of the failed drug screen material and relevant, but exclusion of this evidence would be highly prejudicial to Saint-Gobain.

Lastly, the deposition testimony of Mr. C. Andrew Robinson, Ph.D, is useful to the jury in the above-referenced case. While it is true that Mr. Robinson had no quantitative data to rely upon, Mr. Robinson's testimony adds context to the effects of the intoxication upon Mr. Riley and his ability, or impaired ability, to operate the core drill on the evening in question. Given the presumption under Ala. Code § 25-5-11(c)(3) that Mr. Riley was intoxicated at the time of the incident, qualitative data is not necessary for Mr. Robinson to opine as to the effects of his intoxication.

### 5.  EVIDENCE OF, OR REFERENCE TO, WHETHER SAINT-GOBAIN WAS THE DESIGNER OR MANUFACTURER OF THE PRODUCT IN QUESTION

The Plaintiff asserts in this request that because Saint-Gobain sold the product in question, it should be precluded from presenting evidence that it did not design or manufacture the subject core drill. Other than correctly citing his burden of proof in an AEMLD case, the

7

Plaintiff does not present any legal authority in support of this request. Instead, Plaintiff simply argues that to allow the Defendant to present the truth to the jury the jury might somehow become confused.

It is undisputed in this case that the Plaintiff's theory of liability against Saint-Gobain is that the subject core drill suffered from a design defect. Each of Plaintiff's three (3) liability experts testified that the core drill should have had a continuous operator button and a vacuum pressure gauge.

In his Complaint Mr. Riley alleges that Saint-Gobain "was engaged in the design, manufacture, assembly, testing, inspection, distribution and sale" of the subject core drill. Plaintiff's Complaint, ¶ 5. Plaintiff makes a similar allegation in Count One his Complaint under the AEMLD. Plaintiff's Complaint, ¶¶ 29, 30. Put simply, it cannot be disputed that the Plaintiff's theory of liability against this Defendant is that this Defendant was the manufacturer and designer of the core drill and that it negligently and/or wantonly designed the core drill. Even so, the Plaintiff now files this Motion in Limine to preclude the Defendant from defending the Plaintiff's claims and presenting the truth to the jury.

In Beech through Beech v. Outboard Marine Corp., 584 So. 2d 447 (Ala. 1991), the Alabama Supreme Court answered a certified question from the United States District Court from the Northern District of Alabama regarding the Plaintiff's burden of proof in a defective design cause of action under the AEMLD. The Court articulated the Plaintiff's burden of proof in such a case as follows:

> In order to prove defectiveness, the plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the automobile. The existence of a safer, practical, alternative design must be proved by showing that:

8

      (a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that

      (b) taking into consideration such factors as the intended use of the vehicle, its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

Beech, 584 So. 2d at 450.

In the instant case, it is undisputed that Saint-Gobain was not the manufacturer or designer of the subject core drill. Instead, liability is premised on the fact that because Saint-Gobain placed its trade name on the core drill and sold the core drill as if it were its own product it is therefore liable as if it were the manufacturer or designer of the core drill. The Plaintiff's position is based on a presumption that the jury is somehow unable to understand this concept and that it is therefore necessary to keep the truth from the jury. There is no legal basis or rational basis for this assertion and the Defendant respectfully requests this Court to deny the Plaintiff's request to exclude evidence or testimony regarding the truth.

### 9. EVIDENCE OF, OR REFERENCE TO, ANY OPINIONS OF DEFENDANT SAINT-GOBAIN'S EXPERT GABE URIEGAS CONCERNING THE CAUSE OF THE ACCIDENT

It is at times unclear exactly what Plaintiff is seeking to preclude in this request. The title of the Plaintiff's requested exclusion is quite narrow, but contained within the argument Plaintiff requests this Court to exclude the testimony of Mr. Uriegas in its entirety. To the extent that the Plaintiff is attempting to preclude Mr. Uriegas from testifying in this case, the Defendant respectfully asserts that the Plaintiff's motion is not well founded.

At the time of Mr. Riley's incident Mr. Uriegas was employed as an equipment engineer with Saint-Gobain. (See deposition excerpts of Gabriel Uriegas attached hereto as Exhibit '2').

Mr. Uriegas testified that as an equipment engineer he is involved in a hazard analysis of all of Saint-Gobain's products. Id. at. 9. For example, in regards to the subject core drill, Mr. Uriegas testified that Saint-Gobain did not manufacture or design the core drill, so he examined the core drill, which was manufactured and designed by Diamond Products, to ensure that it fit in the company's market scheme and that it was reasonably safe for use. Id. at 10-11. Clearly, this testimony is relevant to the instant case and is not due to be excluded.

Mr. Uriegas also testified that he has been employed with Saint-Gobain for over twenty-two (22) years and during the entirety of his employment Saint-Gobain has sold and marketed core drills. Id. at 9. Thus, Plaintiff's motion wishes to exclude the testimony of an individual who has more experience in the sale, design, marketing and manufacturing of core drills than any other lay witness or expert associated with this case. Plaintiff contends that Mr. Uriegas "lacks expertise" and "has no reasonable basis" for his testimony regarding the subject core drill. If Mr. Uriegas is lacking, then every witness in this case is lacking in sufficient expertise to testify.

### 10. EVIDENCE OF, OR REFERENCE TO, THE ABSENCE OR LIMITED NUMBER OF VACUUM SECURING SYSTEM FAILURE INJURIES

In his Complaint the Plaintiff alleges that Saint-Gobain "knew or should have known of the defective condition" of the core drill. Plaintiff's Complaint, ¶ 27. Even so, the Plaintiff now asks this Court to deny the Defendant from the opportunity to rebut the Plaintiff's allegations that the Defendant knew that the product was in fact defective. One might say that the Plaintiff would like to have his cake and eat it too.

Because this issue is an evidentiary issue, the Federal Rules of Evidence govern the admissibility of this evidence and testimony. See Wood v. Morbark Indus., Inc., 70 F.3d 1201, 1207 (11th Cir. 1995) ("[F]ederal rules apply to procedural matters, including the admissibility of

evidence"). The applicable considerations for the admissibility of "no prior accident" evidence hinges upon rules 401, 402 and 403 of the Federal Rules of Evidence. Clearly, evidence regarding no prior accidents is probative and relevant for purposes of rules 401 and 402. Therefore, the consideration is whether or not the admissibility of such information is substantially outweighed by any prejudicial value or confusion its admissibility may cause under rule 403. In the instant case, Plaintiff asserts that the admissibility of no prior accidents would be too prejudicial and confusing. The Defendant respectfully asserts that this is contrary to the law, and that the Plaintiff's theory of liability in this case – a design defect – necessarily means that the Defendant should be entitled to produce evidence that there have been no prior accidents that would justify a redesign of the subject core drill.

In support of his argument that evidence of no prior accidents with this core drill or similar core drills should be excluded Plaintiff cites Forrest v. Beloit Corp., 424 F.3d 344 (3rd Cir. 2005). While the Plaintiff correctly cites and quotes a lengthy passage from that opinion, he conveniently ignores the most pertinent portion of the opinion. Specifically, the Court observed that there are cases where no prior accident testimony was deemed admissible because the defendant laid the proper foundation for its admissibility through a witness, usually an employee knowledgeable of such matters, competent to testify to the no prior accident history. Specifically, the Court held as follows:

> [m]ost courts admitting evidence of the absence of prior accidents in product liability cases have done so only where the testifying witness, *usually an employee of the product manufacturer*, has testified that (a) a significant number of substantially identical products have been used in similar circumstances over a period of time; (b) the witness would likely be aware of prior accidents involving these products; and (c) to the witness's knowledge, no such prior accidents have occurred. See, e.g., *Pandit v. American Honda Motor Co.*, 82 F.3d 376, 380-81 (10th Cir.1996) (permitting testimony where allegedly defective feature had been included in nearly 1.9 million automobiles over eight-year period, and these other

11

>   automobiles had been used in substantially similar settings and circumstances); *Espeaignnette*, 43 F.3d at 10 (permitting testimony where manufacturer's president testified that eighty-seven similar products had been sold in the previous fifteen years, and that as president of company any prior accidents or claims involving these products would have come to his attention); *Bilski v. Scientific Atlanta*, 964 F.2d 697, 700 (7th Cir.1992) (permitting testimony where defendant's expert testified that 4,000 identical satellite dishes had been sold and were used under circumstances similar to those at plaintiff's place of employment); *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1154 (6th Cir.1988) (permitting testimony where defendant's expert testified that original design of product dated back to the 1950s and that 200 substantially identical units had been sold by defendant); *Spino*, 696 A.2d at 1174 (permitting testimony where defendant's president indicated that over 100,000 identical ladders had been sold, and that company claims log did not reveal the existence of any prior accidents involving the allegedly defective ladder).

Forrest, 424 F.3d at 355-356. (emphasis added).

In the instant case, the Defendant's witness who would testify regarding the absence of prior incidents with this core drill and similar core drills is Gabe Uriegas. Mr. Uriegas was deposed by Plaintiff's counsel. Mr. Uriegas testified that at the time of the incident he was an equipment engineer with Saint-Gobain and that he was responsible for developing literature and responding to technical questions for their products. (See Uriegas depo. exhibit '2', p. 7). Mr. Uriegas testified that during his entire twenty-two years with Saint-Gobain they have sold core drills. Id. at 9. Therefore, as to the first prong of the test in Forrest, a significant number of substantially identical products have been sold and used in similar circumstances over a period of time. Mr. Uriegas also testified that he inspected the subject core drill and that he prepared a report called Form LM708CPD, which is used to report incidents involving Saint-Gobain products. Id. at 81. Mr. Uriegas explained that these reports are generated whenever there is a reported injury regarding a Saint-Gobain product and that they are kept by the Product Safety division of Saint-Gobain. Id. at 81-82. Although Plaintiff's counsel never asked Mr. Uriegas, it is anticipated that he will testify that he reviewed the files maintained by Saint-Gobain on the

subject core drill and similar core drills and that there have been no reported injuries or claims similar to Mr. Riley's incident. Id. Thus, all three criteria set out in Forrest have been satisfied regarding the admissibility of this testimony.

The admissibility of this evidence is also consistent with the precedent established by the Eleventh Circuit. In Jones v. Otis Elevator Co., 861 F.2d 655 (11th Cir. 1988), the Eleventh Circuit set out the standard for the admissibility of prior, similar accidents in products liability actions. The Court set out the standard for the admissibility of such evidence as follows:

> We have held that "evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338 (5th Cir.1980) (citations omitted). Because of the potential prejudicial impact of prior accidents, courts have developed limitations governing their admissibility. First, conditions substantially similar to the occurrence in question must have caused the prior accident. *Id.* at 339 (quoting *Jones & Laughlin & Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir.1965)). Second, the prior accident must not have occurred too remote in time. Id. Determining the remoteness of evidence is within the trial judge's discretion. *Keyes v. School Dist. No. 1*, 521 F.2d 465 (10th Cir.1975), cert. denied, 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657 (1976).

Jones, 861 F.2d at 661-662.

It is axiomatic to state that if evidence of prior accidents is admissible to prove wantonness or notice, evidence of no prior similar accidents is admissible to prove the lack thereof. The fact that the Plaintiff's complaint attributed notice to the Defendant necessarily means that if such notice existed the Plaintiff might be arguing his motion differently. Moreover, in is Complaint against the Defendant the Plaintiff has a wantonness claim and such evidence is probative and relevant to rebut the Plaintiff's wantonness claim. Therefore, this Defendant respectfully requests this Court to deny the Plaintiff's request to preclude evidence or testimony on this issue.

**WHEREFORE**, Saint-Gobain moves this Court to deny the Plaintiff's Motion in Limine as to the above issues and permit the introduction of evidence and/or testimony by the Defendant on the these issues.

Respectfully Submitted,

/s/ Robert H. Sprain, Esq.
Robert H. Sprain, Esq. (ASB-4177-A38R))
Kevin T. Shires, Esq. (ASB-4392-E64K)
Attorneys for Saint-Gobain, Inc.

**OF COUNSEL:**
SPRAIN & SHIRES, P.C.
1707 29th Court South
Birmingham, Alabama 35209
(205) 437-3232
Email: ktshires@bellsouth.net
rhs@sprainlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following attorneys of record by e-filing of the same and placing a copy thereof in the United States mail, first class, postage prepaid, on this the 3rd day of January, 2007.

Joseph D. Lane, Esq.
COCHRAN, CHERRY, GIVENS,
SMITH, LANE & TAYLOR, P.C.
P. O. Box 927
Dothan, Alabama 36302

C. Winston Sheehan, Jr., Esq.
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
Montgomery, Alabama 36102-2148

Tony Higgins, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.
4001 Carmichael Road, Suite 300
Montgomery, Alabama 36106

/s/ Robert H. Sprain, Esq.
OF COUNSEL