# EXHIBIT   2

# *Shaver Engineering &Design*

P O Box 29092                              404-636-9914
Atlanta, Ga.  30359-0092          FAX: 404-636-8772

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

Matthew Riley,
                    Plaintiff,
Vs,

Milwaukee Electric Tool
Corporation, et. al.,
                    Defendants,

## Serious Injury
## August 29, 2003
## Flavor House Products
## Houston County, Alabama

### INVOLVING A DM500 DYMADRILL CORE DRILL
### PROVIDED BY
### UNITED RENTAL/NORTON/MILWAUKEE/GAST

Report Prepared For:
Joseph D. Lane, Esq.
Cochran, Cherry, Givens, Smith, Lane & Taylor
Post Office Box 927
Dothan, Alabama 36302
Report Number SED060222006-025

EXHIBIT
2- Shaver

This is to serve as my Report of Findings and Opinions to Date in the above referenced matter. As additional information becomes available, I will supplement the opinions as to reflect the information.

## OVERVIEW

Matthew Riley was seriously injured in a work place incident at his employer's plant location, FLAVOR HOUSE PRODUCTS. He attempted to core cut a hole through concrete when a defect /design failure in the drill mechanism allowed the base of the rig to suddenly loose traction (suction) to the concrete floor surface. When this occurred, the coring rig unit suddenly and violently rotated about the axis of the core bit which was partially embedded into the floor. This action occurred in such a short time span that escape from the strike zone was impossible for Mr. Riley. Mr. Riley may have become entangled with the power cord further hampering his ability to get away from the hazard.

This incident occurred on a work shift that began at 11:00PM on August 28, 2003 and was scheduled to run until 7:00 AM., August 29, 2003. The incident apparently occurred on Mr. Riley's fourth or fifth day on the job with Flavor House Products. Mr. Riley, along with Mr. Mike Walters were reportedly drilling (core cutting) 3-1/2 to 4.0 inch holes into the concrete flooring to place bollards (referred to as pylons in Mr. Riley's deposition) to protect a planned sink from fork lift traffic. One hole had been cored by Mr. Walters immediately prior to when Mr. Riley attempted to core cut the second hole. During the cutting of the second

coring, the torque of the drill motor exceeded the resistance torque present from the vacuum, well as any additional forces available, and resulted in the violent release of the rotational force of the drill motor in an unintended and destructive manner. This event caused severe injury to the persons and body of Mr. Mathew Riley as components of the DM500Dymodrill struck Mr. Riley's body, most particularly in the head and face.

## OPINIONS

Identifying the Hazard:

- Sound design engineering principles requires that a hazard analysis be conducted to identify potential hazards or risks of injury associated with the use of the product.

- The Drill Core Cutting Rig was designed with three methods of "holding the base to the cutting surface."

  • Concrete anchor bolts hold down.

  • Vacuum system hold down.

  • Ceiling jack

- Either method of securing the base is appropriate based upon manufacturer representations.

- The vacuum system works by providing sufficient negative vacuum pressure on the base by using a vacuum pump and gasket seal. The gasket shows signs of

some damage and separation upon inspections of the subject Drill Core Cutting Rig which may have contributed to failure of the vacuum.

- Consequently, the Core Drill as designed has a hazard defined as the potential for serious injury as a result of loss of vacuum in the hold down system (Vacuum Loss Hazard), resulting in release of the base during operation, with resulting loss of control of the entire drill apparatus while the drill motor is still under power.

- The Vacuum Loss Hazard, as described above would be reasonably foreseeable to a designer or manufacturer of the product if proper hazard analysis were performed.

## Addressing the Hazard:

- Identified hazards should be eliminated by design, if economically and technically feasible.

- Identified hazards should be minimized by guarding if they cannot be eliminated by design.

- Only if identified hazards cannot be eliminated by design or minimized by guarding should warnings alone be utilized to address the hazard.

- The Vacuum Loss Hazard could have been economically and technically eliminated or minimized through design by incorporating an interlock vacuum sensing switch that would immediately cut power to the drill in the event of loss of vacuum.

- Additionally, the Vacuum Loss Hazard could have further been economically and technically minimized by incorporating a "dead-man" switch into the system. Such a switch would work by requiring positive pressure on a switch that directs power to the drill motor. In the event of loss of vacuum, or loss of base stability, releasing hand pressure on the drill motor power switch would immediately cause the drill motor to stop and minimize the risk of injury.

- Warning of the hazard, standing alone, is an inadequate and inappropriate means of addressing the Vacuum Loss Hazard. Why:
    - Because the hazard can be eliminated or minimized by design; AND
    - The potential for vacuum loss and resulting loss of control can occur suddenly and without warning under the current design, regardless of the care of the operator.

- If warnings are used, they must provide those who are potentially in danger with a means to prevent or minimize injury. At a minimum, audible warnings linked to a vacuum sensing switch should be incorporated into the design to warn operators of loss of vacuum negative pressure. Vacuum gauges should clearly define minimum safe operating ranges, and dangerous operating ranges. The approach of an unsafe value on the vacuum gauge should be clearly defined and marked. Product warnings should clearly warn against conduct and circumstances that might contribute to failure of the vacuum base securing system and convey the danger associated with such conduct.

<u>Designer/Manufacturer/Supplier actions and deficiencies:</u>

- The product is defective and unreasonably dangerous as a result of the designer or manufacturer's failure to address the Vacuum Loss Hazard by design or guarding.

- The Vacuum Loss Hazard should have been reasonably foreseen by a reasonably prudent designer or manufacturer.

- The designer or manufacturer unreasonably failed to address the Vacuum Loss Hazard by design or guarding.

- The Drill Core Cutting Rig offers no built in redundancy or back-up in the event of failure of the vacuum pump/seal.

- Whereas the Milwaukee built drill motor is equipped with a slip clutch, this is inadequate to address the Vacuum Loss Hazard.  The sudden failure of the "hold down" method (the Vacuum System in Mr. Riley's case), caused the injury when all of the kinetic energy exerted in rotation was suddenly released in an uncontrolled manner.  This allowed the heavy base, stand, vacuum pump and drill motor to be uncontrolled and rotate about the core bit axis.  This mass became a rotary hammer that could violently strike anything in its path, in this case the operator, Matthew Riley.  The unit then came to an uncontrolled stop after it tore the power cord loose.

- The vacuum system, as a hold down attachment method for the Drill Core Cutting Rig is just too sensitive for such a vital element of SAFE operation

without the incorporation of mechanisms in the design to eliminate or minimize the risk of injury if the vacuum system fails.

- The designer or manufacturer unreasonably relied upon inadequate instructions or warnings to address the hazard.

- The designer or manufacturer failed to adequately provide active warning systems that would have reduced the potential for injury. The designer or manufacturer did not provide an active warning device (such as an audible alarm) to "alert" the user of a sudden unexpected loss of vacuum. In fact, there is no advisory made to the user of what an acceptable number on the vacuum gauge should be maintained. The Amp meter on which an advisory is made in the manual, would be a minimal warning of something being amiss and an imminent danger. The amp meter might provide some advance warning of binding of the bit in the concrete and an overload of the drill motor, however, a properly functioning vacuum pump would still hold the Drill Core Cutting Rig in place until the power could be cut. The amp meter is insufficient to address the Vacuum Loss Hazard since vacuum failure can occur even in the absence of amperage overload and result in release of the base with the resulting risk of injury.

- The designer or manufacturer failed to provide a safety cut-off to shut down the Drill Core Cutting Rig in the event of vacuum loss.

- The designer or manufacturer failed to provide adequate on-product warnings that may have reduced the potential for injury.

- The designer or manufacturer or supplier failed to provide adequate instructions and warnings in the form of extra-product materials such as manuals or other written material.

- Although warnings and instructions are an inadequate means of addressing the Vacuum Loss Hazard, any warnings or instructions contained in an operator's manual were not readily available due to a failure to provide a pouch or holding device on the Drill Core Cutting Rig unit that readily makes available the Owner's/Operator's instructions to a potential user. The presence of this available container for the Owner's Operator's instructions also alerts operators, responsible supervisors and suppliers of the unit that instructions are missing.

- United Rentals failed to reasonably maintain the core drill and insure that it and component parts were in proper working order. Based upon the condition of the Core Drill on inspection, the product was poorly maintained. The drill bit in use at the time of the incident showed some signs of damage. The vacuum pump was non-functioning and found to have foreign material internally that was resulting from either corrosion of internal parts of pick-up from the vacuum process from previous use.

Actions of Matthew Riley:

- Mr. Matthew Riley was not negligent in the operation of the Drill Core Cutting Rig on or about August 29, 2003.

- Mr. Matthew Riley did not alter or otherwise use the Drill Core Cutting Rig in a manner that was not consistent with its intended design or in a reasonably foreseeable manner.

- Mr. Riley did not fail to abide by any warnings that would have averted the serious injury incident.

- Mr. Riley was not adequately warned of the risks involved in the hidden or "non inherent risks" associated with the operation of this equipment.

## INSPECTIONS AND ANALYSIS

Inspections of the product were conducted at Applied Technical Services in Marietta, GA. On May 12, 2005 and again on February 23, 2006. The following observations were made during the initial May 12, 2005. The stand and base was labeled as "Norton Construction Products DM500" and components from various manufacturers were attached to the stand and base unit to comprise the completed piece of equipment.

The subject Drill Core Cutting Rig was inspected and found to have a broken power cord. The wires were loose at the screw contacts with an appearance consistent with violent breakage as opposed to intentional disconnection.

The Gast Vacuum Pump was non-functioning. Upon disassembly, a white powdery substance was discovered inside the diaphragm. Samples were removed and placed in small isolated containers for future inspection. Later laboratory analysis confirmed the substance as <u>Aluminum Oxide</u>.

The Vacuum Gasket displayed a weakened glue joint and may have been present at the time of incident and as such may have contributed to the occurrence of vacuum loss. Regardless of the condition of the gasket, the system is a hazardous design as it depends on the continuous operation of the vacuum pump for SAFE operation. Any unevenness in the surface or discontinuity between that gasket seal and the cutting surface creates, suddenly and without warning, a hazardous operating condition. The presence of the contaminant in the vacuum pump illustrated the pitfalls of the vacuum being an integral part of a critical safety component.

The DM500 Drill Core Cutting Rig was photographed by the parties present. The clutch was disassembled by the Milwaukee representative, with all parties cooperating and agreeing to the Pre-Inspection Protocol. The clutch friction plates were found to be functioning within the torque specifications and upon separation, displayed no signs of slippage/friction or heating.

The power drive unit was a 20 amp, 120 volt, 900/450 RPM Heavy Duty Milwaukee DYMODRILL. The drill motor unit was unremarkable. The unit was not reassembled upon completion of the inspection. Component disassembled components were placed in separate plastic Ziploc bags. The core bit accompanying the unit displayed scarring and scratches consistent with a violent event. The overall condition of the unit supported the occurrence of a harsh violent event associated with the unit.

The second inspection occurred on February 23, 2006. During that inspection, additional parties, that were not present at the first inspection, were allowed to inspect the unit.

Based upon the inspections as described above and based upon other materials as listed below, it is clear that the cause of the incident was a failure of the designed and recommended base securing method (vacuum method) as set out in the manuals reviewed for this product. At the time of the incident, the vacuum system failed to provide sufficient holding force to prevent the base from breaking free when the drill bit became bound in the hole. To be effective as a securing mechanism, the force/torque balance provided by the vacuum system must be substantially higher than the maximum force at the drill spindle, which is the point at which the drill motor clutch begins to slip. That was not the case here. Although the force of the vacuum is intended to exceed the force required to cause clutch slippage, the vacuum force obviously was inadequate at the time of the incident. This is an inherent flaw in the design that can and will result in sudden and unexpected failure. Consequently, the design must incorporate mechanisms to prevent injury if and when the failure occurs, as it did in this case. Those mechanisms are described in my opinions above. Additionally, in the absence of such failsafe mechanisms it becomes even more critical that the product be maintained properly to minimize potential vacuum system failure. That was not done in this case and contributed to cause the failure.

## DOCUMENTS/ITEMS REVIEWED

In addition to the inspections of the subject DM 500 Dymodrill, I have:

- Inspected an exemplar Drill (DR 520) along with Owners and Operators Manuals for both the DM500 and the DR520.

- Reviewed the deposition of Mr. Mathew Riley,

- Reviewed United Rental's Rental Return Invoice

- Reviewed a copy of Discovery answered by the defendants.

- Reviewed and examined photographs of the Inspections.

- Reviewed the Complaint and Answers to the Complaint

- Reviewed Defendant, United Rentals Request for Admissions and answers to Interrogatories.

- Reviewed Defendant, United Rentals' Initial Disclosures.

## SUMMARY

At the time of the incident in question, the DM500 Dymodrill was being used by Mr. Matthew Riley in a reasonable and foreseeable manner. The Product was not being misused by Mr. Riley or anyone working with Mr. Riley at the time of the incident. The Product was being used for its intended use and in a manner consistent with the owners/operators manuals. The Product was defective and negligently designed in that a dangerous condition existed that was likely to result in serious injury in the event of a loss of vacuum when the unit was used for its intended purpose or in a reasonably

foreseeable manner. This event of vacuum loss was not only foreseeable by a design engineer but an event to be considered "likely to occur" in field use. The failure of the vacuum was not remedied by design as it should have been by incorporating economically and technically feasible failsafe mechanisms that would have provided a high degree of protection in the event of a vacuum loss. Finally, although warnings alone are insufficient to adequately address the vacuum loss hazard, the hazard was not adequately warned about, in advance of use, or by an alert/alarm during use.

The subject DM500 Dymodrill was not properly maintained prior to transfer of the product to Flavor House and use by Mr. Riley. Failure to properly maintain the product by United Rentals caused or contributed to cause the vacuum failure and catastrophic results of the failure.

This is a summary of my opinions to date stated to a reasonable degree of engineering certainty or probability. As additional evidence becomes available to me, I will incorporate that evidence in forming additional opinions once the foundation is laid for those opinions.

Respectfully submitted,

Donald R. Shaver, P.E.
Ga License 18807
Expiration 12-31-2006

# DONALD ROBERT SHAVER, P.E.

P.O. BOX 29092
ATLANTA, GEORGIA 30359
PHONE (404) 636-9914          FAX (404) 636-8772

### OVERVIEW

Donald R. Shaver is a Registered Professional Engineer. He is licensed and qualified to practice Mechanical Engineering in the State of Georgia. State of Georgia Registration Number: 18807 He has testified in The State and Superior Courts of Georgia as well as Recorder's Courts, Mediations, Arbitrations and Depositions. Additional Expert Testimony has been rendered in various state and Federal Court jurisdictions in South Carolina, Tennessee, Alabama, Mississippi and Louisiana

### EDUCATION

Donald R. Shaver is a graduate of the Georgia Institute of Technology with a Bachelors of Textile Engineering.

# Course work included:

- Three Quarters of College Calculus Based Physics
- Mechanics of Deformable Bodies
- Six quarters of Calculus and Differential Equations
- College Chemistry
- Statics (Vector Mechanics for Engineers)
- Dynamics(Kinematics and Kinetics of Rigid Bodies in plane motion)
- Kinematics and Dynamics of Linkages
- Materials Science
- Polymer Science and Engineering
- Fiber Reinforced Materials(Composites)
- Engineering Graphic
- Written and Oral Communication in Science Business and Industry
- Fluid Mechanics(Hydraulics)

! Thermodynamics
! Quality Control
! Electrical Engineering

## CONTINUING EDUCATION:

! MOTOR VEHICLE ACCIDENT RECONSTRUCTION, *Society of Automotive Engineers, Detroit Michigan, February,1994*

! SOCIETY OF AUTOMOTIVE ENGINEERS CONGRESS, *Attended Presentation of Accident Reconstruction Papers, Exhibit Floor and various Standards Committee Meetings 1994,1996,1998,1999 and 2005*

! MECHANICAL ENGINEERING PRINCIPLES, *Georgia Institute of Technology, Atlanta, Georgia, September, 1989*

! HYDROLOGY, *Southern Technical Institute, Marietta,Georgia, 1992*

! QUALITY MANAGEMENT SYSTEMS LEAD ASSESSOR, *Quality Management International. Atlanta, Georgia, May, 1994*

! COMMERCIAL VEHICLE ACCIDENT INVESTIGATION AND RECONSTRUCTION, *Arkansas State University, Jonesboro, Arkansas,June 1996*

! HIGH SPEED AND LOW SPEED IMPACT SEMINAR, *Macinnis Engineering,Vancouver British Columbia, August 1997*

! SPECIAL PROBLEMS IN ACCIDENT RECONSTRUCTION, *Institute of Police Technology and Management, Jacksonville, Florida, May, 1997*

! FUNDAMENTALS OF SENSOR DESIGN FOR AUTOMOTIVE AIR BAG SYSTEMS, *Society of Automotive Engineers, February, 1998*

! COURSE ON CRUSH AND MOMENTUM APPLICATIONS, *Georgia State University, Atlanta, Georgia, June 1998*

! FORENSIC MAPPING USING AUTOCAD LT 98, *Georgia Institute of Technology, Atlanta, Georgia, December 1998*

! TEXAS ASSOCIATION OF ACCIDENT RECONSTRUCTION, *Winter Seminar, Houston,Texas, January 99*

! SOUTH CAROLINA ACCIDENT RECONSTRUCTION SEMINAR, *Myrtle Beach South Carolina, October 99*

! VETRONIX CORPORATION CRASH DATA RETRIEVAL TRAINING SEMINAR, *Santa Barbara, California, June 2000*

! QUALITY MANAGEMENT SYSTEMS LEAD ASSESSOR, *Quality Management International. Woodstock, Georgia, February, 2002*

! PC CRASH COMPUTER ACCIDENT RECONSTRUCTION AND SIMULATION CLASS, *MacinniS Engineering,Vancouver British Columbia, July 2003*

! OCCUPANT AND VEHICLE KINEMATICS IN ROLLOVERS SEMINAR, *Society of Automotive Engineers, Detroit Michigan, April 2005*

## EXPERIENCE

*SHAVER ENGINEERING AND DESIGN CONSULTANTS*, GA LICENSE.# 001740, Atlanta, Georgia, July 1993-Present , Principal: Providing Professional Engineering Consulting  Services to Manufacturing, Legal and Insurance Industries. Serving  as Expert Witness, Technical Consultant for Attorneys in Accident and Incident Reconstruction, ISO 9000/Quality Consultant and Products Liability Consultant. Donald R. Shaver founded Shaver Engineering and Design Consultants in 1993 to provide consulting services to the MANUFACTURING, LEGAL AND INSURANCE Industries. Shaver Engineering and Design Consultants provides Engineering and Management consulting services to enhance the existing management and technical teams of Manufacturing Industries. It provides consulting

services for additional insight to Manufacturing,
Legal, and Insurance professionals.


*GEORGIA DUCK AND CORDAGE MILL,* Scottdale, Georgia,
June 1983-July 1993 , Manager of Research and
Development: Oversaw projects in various areas of
research, new product development,  and support for
production; including design and set up of Standard as
well as Unique testing procedures and equipment.
Evaluating both chemical and physical properties of
proposed raw materials and product designs. Designed
tests and wrote test procedures for company's
Geosynthetic products, Environmental products, Material
Handling and Military Components products. This was in
addition to overseeing sensitive production processes
as well as assuring that Research and Quality Control
Lab Maintained adherence to test procedures prescribed
by ASTM., Mine Safety and Health Administration, Rubber
Manufacturer's Association, ISO and Military Specs.
Extensive skills were developed in testing and
measurement of physical and chemical properties.
Developed documented work procedures for laboratory,
maintenance and manufacturing processes and procedures.

*GEORGIA INSTITUTE OF TECHNOLOGY*, School of Textile
Engineering, Jan 1982-Aug 1983, Student Research Assistant:
Designed, built and evaluated test machinery to test elbow
and knee joints for NASA Space suit, evaluated various
polymer coatings and coating techniques for the project.

### ADDITIONAL AREAS OF WORK EXPERIENCE:
! Farm Machinery ! Welding and Metal Fabrication
! Metal Furniture and Handrail Manufacturing ! Injection Molding
! Internal Combustion Engines ! Brake Systems Repair and Failure
! Rivet Failure ! Plumbing Component Failures ! Disabled Access
! Residential and Commercial Real Estate Risk Management
! Building and Safety Code Compliance ! Products Liability
! Motor Vehicle Safety Reconstruction
! Industry Standards and Benchmarking Analysis
! Commercial and Private Motor Vehicle Accident
! Destructive and Non-Destructive Materials and Product Testing

## PROFESSIONAL AND COMMUNITY AFFILIATIONS:

! Georgia Society of Professional Engineers, Former State V.P.! National Society of Professional Engineers !Member of The American Society of Testing Materials(ASTM) !Member of American Society of Quality Control (ASQC) !Election to Full Member Grade of The Society Of Automotive Engineers (SAE)  !Attended SAE National Convention Technical Presentations on Automobile Accident Reconstruction !Phi Psi Professional Fraternity !American Consulting Engineering Counsel !Southeastern Organization of Accident Reconstruction Specialists

## Donald R. Shaver, P.E.

### _List of Testimony by Deposition and Trial Testimony_

#### _DEPOSITION TESTIMONY:_

**_Douglas Vs. Henri=s Bakery et.at_**
State Court of Fulton County GA
Deposition 6/96

**Hopkinson Vs. Graff et.al**
State Court of Fulton County GA
Deposition. 12/96

**Gregory et. al. Vs. Surgical Appliances Industries Inc. et.al**
Superior Court of Gwinnett County GA
Deposition 1/97

**Blake Vs. General Motors**
State Court of Fulton County GA
Deposition 4/97

**Johnson Vs. Francois**
State Court of Dekalb County GA
Deposition 6 /97

**Morris et. at Vs. Metropolitan Atlanta Rapid Transit Authority et.al**
Superior Court of Fulton County GA
Deposition 9/97

**Thombassi Vs. Campbell**
State Court of Cobb County GA
Deposition 10/97

**Sanchez Vs. Pucket**
Superior Court of Clayton County GA
Deposition 11/97
_**CONTINUED DEPOSITION TESTIMONY NEXT PAGE:**_

## *CONTINUED DEPOSITION TESTIMONY:*

**Sims Vs. Mote**
Superior Court of Barrow County GA
Deposition 10/98

**Brantley Vs. World of Wheels and Hubcaps Inc.**
Superior Court of Dekalb County GA
Deposition 2/99

**Henley et. al Vs. Chrysler Corporation**
State Court of Cobb County GA
Deposition 2/99

**Estate of Sylvia Towns Vs. Culpepper et.al**
Superior Court of Muscogee County GA
Deposition 8/99

**Baxter Vs. Thomas Concrete**
Superior Court of Dekalb County GA
Deposition 02/2001

**Womble Vs. Crews**
Superior Court of Jones County GA
Deposition 04/2001

**Estate of Tonia Cheatwood Vs. Thomas Hallmark**
State Court of Cobb County GA
Deposition 05/2001

**Robbie's Tree Service Inc. and Eric Easeley Vs. The United States of America**
United States District Court, Western District of Louisiana
Deposition 07/2001

## *CONTINUED DEPOSITION TESTIMONY NEXT PAGE:*

## *CONTINUED DEPOSITION TESTIMONY:*

**Hughes Vs. Phipps et al.**
State Court of Fulton County
Deposition 12/2001

**Martin Zachary as Exectr., Jesse Zachary et al Vs. Bridgstone/Firestone et al**
United States District Court of Indianapolis, IN
Deposition 01/2002

**Ravenal et. al. Vs. National Fireman Insurance et. al.**
Superior Court of Hart County GA.
Deposition 02/2002

**Brandon  Vs. Hobbs**
Circuit Court of Randolph County
Deposition 08/2002

**Weems Vs. Woolfolk**
State Court of Fulton County
Deposition 12/2002

**Zilly Transportation Services, LLP.  Vs. Bridgestone Metalpha U.S.A., Inc.** Montgomery County Tennessee
Deposition 04/2003

**McClure Vs. TRL Trucking**
State Court of Gwinnett County, GA
Deposition 07/2003

**Champlin  Vs. General Motors Corporation**
Catahoula Parish Court, Louisanna
Deposition 07/2003

**Rodgers Vs. Woodbine Manufacturing Co.**
U.S. District  Court, Southern District of Georgia
Deposition 07/2003

## *CONTINUED DEPOSITION TESTIMONY NEXT PAGE:*

## _CONTINUED DEPOSITION TESTIMONY:_

**Cole Vs. Ford Motor Co.**
First Judicial District of Jasper County, Mississippi
Deposition 01/2004 (Deposition Not Completed)

**Rodgers Vs. Woodbine Manufacturing Co. & U.S. Tsubacki**
U.S. District Court, Southern District of Georgia
Deposition 06/2004

**Briggs Vs. Genie Scissor Lift and Sunbelt Rentals**
U. S. District Court, Northern District of Georgia, Atlanta Division
Deposition 09/2004

**Cadena Vs MARTA**
Gwinnett County GA Superior Court
Deposition 01/2005

**Wilkes Vs. Silvers et.al**
Treutlen County, GA Superior Court
Deposition 02/2005

**Ingram Vs. Primus et. al**
Hancock County, GA Superior Court
Deposition 02/2005

**Morrow et. al. Vs. Guaranteed Air Freight, Sikes Transportation, William Harris & Ford Motor Co**
Fulton County, GA State Court
Deposition 03/2005

**Blanchard Vs. Ford Motor Co**
Superior Court of Richmond County, GA
Deposition 03/2005/ and concluded 12/2005

**Estate of Bailey Vs. Harper et.al.**
State Court of Clayton County
Deposition 04/2006

## _CONTINUED DEPOSITION TESTIMONY NEXT PAGE:_

## *CONTINUED DEPOSITION TESTIMONY:*

**Tim Campbell et.al. Vs. General Motors Corporation**
State Court of Cobb County
Deposition 05/2006

## *TRIAL TESTIMONY:*

**State of Ga. Vs. Malone**
Atlanta Traffic Court GA
Trial Testimony 1/97

**Blake Vs. General Motors**
State Court of Fulton County GA
Trial Testimony 5/97

**Sims Vs. Mote**
Superior Court of Barrow County GA
Trial Testimony 10/98

**Johnson Vs. Francois**
State Court of Dekalb County  GA
Trial Testimony 7/99

**Sanchez Vs. Pucket**
Superior Court of Clayton County GA
Trial Testimony 9/2000

**State of Georgia Vs. Smith**
Superior Court of Gwinnett County GA
Trial Testimony 01/2001

**State of Georgia Vs. Randall**
State Court of Cherokee County GA.
Trial Testimony 05/2001

## *CONTINUED TRIAL TESTIMONY NEXT PAGE*

## CONTINUED TRIAL TESTIMONY

**Robbie's Tree Service Inc. and Eric Easeley Vs. The United States of America**
United States District Court, Western District of Louisiana
Trial Testimony 11/2001

**The State of South Carolina Vs. Andrew Cassells**
Superior Court of Beaufort County South Carolina
Trial Testimony 03/2003

**Zilly Transportation Services, LLP. Vs. Bridgestone Metalpha U.S.A., Inc.**
Montgomery County Tennessee
Trial Testimony 05/2003

**State of Georgia Vs. Jason Harris**
Superior Court of Cobb County GA
Trial Testimony 06/2003

**State of Georgia Vs. Sherman Clark**
Superior Court of Dekalb County
Trial Testimony 03/2005

**Womble Vs. Crews**
Superior Court of Jones County GA
Trial Testimony 10/2005

## Compensation:

I currently charge $200 per hour for investigative work, research, deposition and trial testimony. There is a three-hour minimum for deposition in addition to a one-hour charge for reading and signing of the deposition. There is a four-hour minimum for trial, administrative hearings, mediation or arbitration. This is in addition to direct and actual expenses associated with the case.

State of Ga v Troupe
Auto accident reconstruction

Mann v McGinness   Aug. 2006
Trailer - ramp

Rose v DH Shaver - (TTI